**SUPERIOR SHORES LAKEHOME ASSOCIATION, Appellant,**

v.

**JENSEN–RE PARTNERS, et al., Respondents.**

No. A10–1108.

Court of Appeals of Minnesota.

Jan. 25, 2011.

**866**

Mark M. Nolan, Nolan, Thompson & Leighton, St. Paul, MN, for appellant.

Peter G. Mikhail, Kennedy & Graven, Chartered, Minneapolis, MN, for respondents.

Considered and decided by ROSS, Presiding Judge; HUDSON, Judge; and SCHELLHAS, Judge.

## OPINION

HUDSON, Judge.

On appeal from summary judgment, appellant-condominium association contends that the district court erred in determining that respondents' condominium unit, which has been configured into two separate living areas, is only one unit and owes only one assessment. Because the requirements for subdividing a unit and imposing an additional assessment under the UCA were not satisfied, we affirm. We also grant respondents' motion to strike appellant's request for reformation of the condominium declaration.

## FACTS

Appellant Superior Shores Lakehome Association (SSLA) is the condominium association for the Superior Shores Resort (Superior Shores). Respondents Jensen–Re Partners and Joseph Re (collectively Jensen–Re) own unit 57 in Superior Shores. The parties dispute whether unit 57 has been configured into two units and whether it owes two assessments. The resolution of these issues largely turns on events that transpired almost twenty years ago, before Jensen–Re purchased the unit.

Sometime in the early 1990s, the SSLA board permitted the former owners of unit 57 to reconfigure the unit into two living areas with separate walkways, entrances, and kitchens. Around the same time, the owners of unit 57, along with the owners of other units that had been divided into two living areas, agreed to pay two assessments for their units. The relevant SSLA board meeting minutes reflect these decisions, but nothing in the minutes indicates whether the SSLA board approved the

reconfiguration of unit 57 as an alteration—which does not require an amendment to the Superior Shores declaration—or whether the reconfiguration was approved as a subdivision of the unit, which does require such an amendment. *See* Minn.Stat. § 515A.2–115 (describing requirements for subdividing unit). In addition, the parties agree that the Superior Shores declaration was never amended to reflect any subdivision of unit 57 or the imposition of an additional assessment on the unit.

On December 29, 2006, Jensen–Re acquired unit 57 from the former owners by warranty deed. Prior to purchasing unit 57, Jensen–Re managed several units within Superior Shores, including unit 57. Although Jensen–Re was not responsible for paying the assessments for unit 57, Jensen–Re knew that the former owners were paying two assessments for the unit. Jensen–Re assumed the double payments were gratuitous because there were no recorded amendments to the declaration requiring the owners to pay two assessments. Jensen–Re made no inquiries concerning the double payments.

On December 21, 2006, prior to Jensen–Re's purchase of unit 57, the SSLA provided Jensen–Re with a resale disclosure certificate, which stated that unit 57 was responsible for one assessment of $440. But on January 16, 2007, a few weeks after Jensen–Re's purchase of unit 57, the SSLA issued an amended resale disclosure certificate, which stated that unit 57 was responsible for two assessments totaling $880. The accompanying letter stated that the SSLA had inadvertently reported that unit 57 was responsible for one assessment of $440 in the original disclosure certificate.

Since purchasing unit 57, Jensen–Re has paid a single assessment payment for unit 57. The SSLA contends that Jensen–Re was required to pay a double assessment payment because unit 57 is comprised of two separate living units. Accordingly, the SSLA sued Jensen–Re for recovery of past-due assessments, interest, and attorney fees. Jensen–Re filed counterclaims for slander of title and for a declaration that unit 57 is only one unit.

The parties brought cross-motions for summary judgment. The district court determined that under the UCA, unit 57 is one unit; Jensen–Re is responsible for a single assessment payment; and there is no legal basis for returning unit 57 to its original configuration. The district court, therefore, denied the SSLA's motion and granted Jensen–Re's motion. This appeal by the SSLA follows.

## ISSUES

I. Did the district court err in determining that unit 57 was not subdivided into two units when the former owners failed to amend the declaration as required by Minn.Stat. § 515A.2–115?

II. Did the district court err in determining that unit 57 was not responsible for two assessments where the declaration was never amended to impose such an obligation as required by Minn.Stat. § 515A.2–108(b)?

III. Did the district court err in determining that there was no legal basis for compelling Jensen–Re to restore unit 57 to its original configuration where the unit has been reconfigured into two separate living areas but has not been subdivided?

## ANALYSIS

When reviewing an order granting summary judgment, this court determines first, whether there are any genuine issues of material fact, and second, whether the district court erred in its application of the law. *State by Cooper v. French,* 460

N.W.2d 2, 4 (Minn.1990). When the order for summary judgment is based on undisputed facts, this court's review is de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998). Here, the parties agree that there are no genuine issues of material fact, and we therefore review the district court's order de novo. *See id.*

## I

■ Condominiums are creatures of statute. The UCA, along with the recorded declaration and bylaws, govern the rights of the condominium association and the condominium-unit owners. Significant to this appeal, the UCA authorizes the subdivision of condominium units "[i]f the declaration expressly so permits." Minn. Stat. § 515A.2–115(a). The Superior Shores declaration permits the subdivision of a unit so long as the owner obtains approval from the SSLA board, or if the SSLA board does not agree, from the SSLA. Here, the parties agree that the SSLA board approved the reconfiguration of unit 57, but they dispute whether the SSLA board approved the reconfiguration as an alteration to or subdivision of unit 57. Even if we assume that the SSLA board approved the subdivision of unit 57, however, the unit has not, as a legal matter, been subdivided.

"Subdivision" is effectively a term of art under the UCA. To subdivide a unit, the UCA requires that the unit owner "prepare and execute an amendment to the declaration including ... the condominium plat, subdividing or converting that unit." *Id.* The amendment must "assign an identifying number to each unit created, and reallocate the common element interest, vote[ ] in the association, and common expense liability formerly allocated to the subdivided unit to the units in accord with section 515A.2–108." *Id.* The amendment

must also be executed by the unit owner and any mortgagee of the unit, and recorded with the proper authority, with a certified copy delivered to the association. *See* Minn.Stat. § 515A.2–115(a)–(b). Because the former owners of unit 57 never prepared, recorded, or delivered an amendment to the declaration, we conclude that the unit has not been subdivided under the UCA. *See id.*

■ The SSLA argues that the district court should have reformed the declaration to recognize the subdivision of unit 57. Jensen–Re has filed a motion to strike the SSLA's request for reformation because it was not properly raised before the district court. A reviewing court must generally consider "only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). At best, the SSLA raised the issue of reformation in its request to file a motion for reconsideration, but the district court denied the request and did not consider or decide whether the declaration should be deemed reformed. *See Antonson v. Ekvall*, 289 Minn. 536, 539, 186 N.W.2d 187, 189 (1971) (stating claim made "too late" when made for the first time in a motion for a new trial); *Allen v. Cent. Motors*, 204 Minn. 295, 299, 283 N.W. 490, 492 (1939) (stating issue raised "too late" when first raised in motion for amended findings). Therefore, we will not consider the SSLA's request for reformation and accordingly grant Jensen–Re's motion to strike. *See id.*

## II

■ Minn.Stat. § 515A.2–108 governs the allocation of common-expense liabilities, more commonly known as assessments. Minn.Stat. § 515A.2–108. It provides that

[t]he declaration shall allocate a fraction or percentage of the undivided interests in the ... common expenses ... to each unit in such manner that each of the items is equally allocated or is allocated according to the proportion of the area or volume of each unit to the area or volume of all units.

Minn.Stat. § 515A.2–108(a). As a general rule, the "common expense liability allocated to any unit may not be altered, except as an amendment to the declaration which is signed by all unit owners and first mortgagees." Minn.Stat. § 515A.2–108(b). Here, the declaration provides that unit 57 is responsible for one assessment, or 1/46th, of the common-expense liability. The declaration has never been amended to impose an additional assessment on unit 57. As such, unit 57 remains responsible for only one assessment.

The SSLA does not dispute that the declaration has not been amended to impose an additional assessment on unit 57 as required by Minn.Stat. § 515A.2–108(b). Nevertheless, the SSLA contends that Jensen–Re is responsible for paying two assessments based on equitable theories of reformation, unjust enrichment, equitable estoppel, and waiver. Specifically, the SSLA argues that Jensen–Re knew that unit 57 was responsible for two assessments before it purchased the unit and therefore it is required to continue paying these assessments as a matter of equity.

■ Jensen–Re responds that this court cannot invoke equitable theories to circumvent the plain language of the UCA. We agree. " '[A] court of equity will not disregard statutory law or grant relief prohibited thereby.' " *Wells Fargo Home Mortg., Inc. v. Chojnacki,* 668 N.W.2d 1, 5 (Minn. App.2003) (quoting *Kingery v. Kingery,* 185 Minn. 467, 470, 241 N.W. 583, 584 (1932)). Minn.Stat. § 515A.1–104 states that the UCA's provisions cannot be varied or waived unless a specific provision provides otherwise. Minn.Stat. § 515A.1–104. But Minn.Stat. § 515A.2–108(b) contains no language permitting the parties to vary or waive the requirements for alteration of a unit's assessment except in certain circumstances not applicable here. *See* Minn.Stat. § 515A.2–108(b). Thus, even though the SSLA board and the former owners of unit 57 agreed that the unit would pay two assessments, this agreement was insufficient to alter unit 57's assessment in a manner that would bind successor owners of that unit. *See id.*

Despite the clear requirements set forth in Minn.Stat. § 515A.2–108(b), the SSLA argues that equitable relief is available because the UCA is to be "liberally administered" and supplemented by "principles of law and equity." Minn.Stat. §§ 515A.1–114; 515A.1–108. But we cannot resort to equitable principles if the outcome would be "inconsistent with [the UCA]." Minn. Stat. § 515A.1–108. Here, if we were to conclude that unit 57 is responsible for two assessments based on an agreement between the former owners of unit 57 and the SSLA board, our decision would contravene the express language of Minn.Stat. § 515A.2–108(b). *See Butler Bros. Co. v. Levin,* 166 Minn. 158, 161, 207 N.W. 315, 316 (1926) ("It is not for judicial power so to thwart legislative purpose."). Because the declaration has never been amended to impose two assessments on unit 57, we conclude that unit 57 is not responsible for two assessments.

We also note that even if we were to conclude that unit 57 was subdivided under Minn.Stat. § 515A.2–115, unit 57 still would not be responsible for two assessments. When subdividing a unit, the unit owner is only authorized to "reallocate the ... common expense liability formerly allocated to the subdivided unit to the [resultant] units." Minn.Stat. § 515A.2–115(a).

Thus, even if there were an agreement to subdivide unit 57 and even if the former owners had fulfilled all of the requirements in Minn.Stat. § 515A.2–115(a), only the single assessment of $440 could have been reallocated between the resultant units. *See id.* Two assessments could not have been imposed on the resultant units unless the declaration had been amended in accordance with Minn.Stat. § 515A.2–108(b).

## III

The SSLA contends that, as currently configured, unit 57 is comprised of two living areas and therefore constitutes two units. The SSLA further contends that for Superior Shores to be in compliance with the UCA and its own declaration, unit 57 must be returned to its original configuration so that it constitutes one unit. Because we conclude that unit 57 remains one unit, we need not address whether unit 57 would need to be returned to its original configuration if this were no longer the case.

The UCA defines a "unit" as "a portion of the condominium, whether or not contained solely or partially within a building, designated for separate ownership, the boundaries of which are described pursuant to section 515A.2–110." Minn.Stat. § 515A.1–103(19).[1] Unit 57 continues to meet this definition because (1) it is comprised of a portion of Superior Shores and its common elements; (2) it is designated for separate ownership in the declaration; and (3) its boundaries are described in the declaration. Because there is no concern that unit 57 is in violation of the UCA or the declaration, there is no need for this court to evaluate what relief—if any— would be available if unit 57 were not one unit.

We recognize that this dispute likely resulted from good-faith errors on the part of the former owners of unit 57 and the SSLA board, but we cannot ignore the plain requirements of the UCA, which ensure that current and future owners are put on notice of, and allowed to participate in, changes to a condominium complex that will affect their interests, rights, and obligations. Here, the former owners of unit 57 and the SSLA board may have intended for unit 57 to be subdivided and to pay the assessments of two units. Without fulfilling the requirements of the UCA, however, these parties could not bind Jensen–Re to their agreement.

## DECISION

The district court did not err in determining that, under the UCA, unit 57 is one unit and therefore responsible for only one assessment.

**Affirmed; motion granted.**

---

1. Neither party has challenged the application of the UCA's definition of a "unit," but it is important to note that the UCA provides that its definitions will serve as the definitions "[i]n the declaration and bylaws, unless specifically provided otherwise or the content otherwise requires." Minn.Stat. § 515A.1–103. The declaration describes a "unit" in much greater detail than the UCA, but like the UCA, the declaration defines a "unit" in relevant part as "[a] portion of the [c]ondominium, whether contained solely or partially within a building designated for separate ownership, together with its percentage of undivided interest in the [c]ommon [e]lements." Thus, regardless of whether we apply the definition of "unit" in the UCA or in the declaration, the outcome remains the same. Because the parties use the definition of "unit" found in the UCA, we apply that definition as well.