**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-0252**

Troy K. Scheffler,
Appellant,

vs.

City of Anoka, et al., Respondents,

City of Coon Rapids, et al., Defendants,
Hicken, Scott, Howard & Anderson, P. A., et al.,
Respondents.

**Filed February 6, 2017**
**Affirmed; motion granted**
**Ross, Judge**

Anoka County District Court
File No. 02-CV-15-2550

Peter J. Nickitas, Peter J. Nickitas Law Office, LLC, Minneapolis, Minnesota (for appellant)

Anna L. Yunker, Pamela L. VanderWiel, Everett & VanderWiel, Rosemount, Minnesota (for respondent City of Anoka)

Paul C. Peterson, William L. Davidson, João C. Medeiros, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota (for respondents Hicken, Scott, Howard & Anderson, P.A. and Michael Scott)

        Considered and decided by Schellhas, Presiding Judge; Ross, Judge; and Jesson, Judge.

## S Y L L A B U S

   I.    Minnesota Statutes sections 13.03, subdivision 3, and 13.04, subdivision 3 (2016) of the Minnesota Government Data Practices Act require the release of government data only when the requestor makes his data-access request to the government entity's responsible authority or designee.

II.      A government entity is not liable for alleged violations of Minnesota Statutes sections 13.03, subdivision 3, or 13.04, subdivision 3, if the data requestor did not make a request to the government entity's responsible authority or designee and the responsible authority or designee did not receive the data request.

III.    The Minnesota Government Data Practices Act does not recognize responsible authorities or designees by operation of apparent authority.

**O P I N I O N**

**ROSS**, Judge

Precipitating this data-practices action, appellant Troy Scheffler was the subject of a police report and a supplemental report. After he unsuccessfully requested a copy of the supplement, Scheffler sued the City of Anoka along with its contracted city attorney and the city attorney's law firm for allegedly violating the Minnesota Government Data Practices Act. The attorney and firm moved to dismiss, and the city moved for summary judgment. Scheffler then asked the city's responsible authority and designee for the supplement, and he received it. After he moved to amend his complaint, the district court partially granted Scheffler's motion but dismissed the amended complaint against the attorney and his firm, and it granted summary judgment to the city. Because Scheffler did not direct his initial requests to the specified responsible authority or designee as required by the data practices act, because the attorney was acting in a professional capacity for the city and therefore not subject to the act, because there was no evidence of the continued existence of any previous version of the supplement when Scheffler contacted the responsible authority and designee, and because Scheffler lacks standing to challenge the absence of a contract between the city and the law firm, we affirm.

2

## FACTS

Appellant Troy Scheffler was arrested by Coon Rapids Police Officer M.M. in July 2014 and charged with disorderly conduct and obstruction of legal process. Scheffler attended Officer M.M.'s unrelated family-court hearing in Anoka on August 22, 2014. The officer reported Scheffler's attendance to Coon Rapids Police Captain Paul Ireland, who in turn informed Anoka Police Captain Scott Nolan. Captain Nolan interviewed M.M. and drafted an incident report and a two-page supplement summarizing M.M.'s and Captain Ireland's statements. Attorney Michael J. Scott received a copy of the report and supplement in the fall of 2014. Scott and his law firm, Hicken, Scott, Howard & Anderson P.A. (HSHA), contract as Anoka's city attorney.

Scheffler requested the report in person at the Anoka Police Department (APD) on August 25, 2014. The records manager provided Scheffler with the incident report, which included the phrase "SEE SUPP." The records manager refused to provide the supplemental report because the case was "under investigation." On September 12, 2014, Scheffler's legal counsel asked Scott in writing to provide the supplement, saying, "I make this request on behalf of Mr. Scheffler in accordance with Minn. Stat. § 13.04, subd. 3." Scheffler returned to the APD with his counsel on September 16, 2014, demanding access to the supplement. The records staff allegedly told Scheffler that the supplement did not exist. On October 8, 2014, Scheffler's counsel again wrote Scott seeking the supplement and referring to the Minnesota Government Data Practices Act (MGDPA), adding, "You, your office, the Responsible Authority for the City of Anoka, and the Data Practices Act Designee for the Anoka P.D. have refused to answer Mr. [Scheffler's] three preceding

3

requests for access to the supplement." The request also asked that Scott cite legal authority if he refused to provide the supplement. On November 4, 2014, the state voluntarily dismissed the criminal charges that were based on Coon Rapids Officer M.M.'s allegations.

On January 28, 2015, Scheffler again went to the APD seeking the supplement. Scheffler recorded his conversation with the records staff. The records manager claimed that the report was available and directed Scheffler to Scott's office. Scheffler went to Scott's office and first spoke with Scott's receptionist, who said she could not find the supplement. Scott eventually arrived, told Scheffler he did not know anything about Scheffler's previous requests, and sent Scheffler away. In a sworn affidavit, Scott claimed that in February 2015 he determined there was insufficient evidence to support the criminal charges against Scheffler regarding his attendance at Officer M.M.'s family-court hearing.

Scheffler sued the City of Anoka, Anoka County, the City of Coon Rapids, HSHA, and Scott. Scheffler later dismissed the claims against Anoka County and Coon Rapids. Count I alleged that the respondents violated the MGDPA by failing to give Scheffler the supplement. Count II was dismissed for jurisdictional reasons and is not relevant here.

Scott and HSHA moved to dismiss the complaint, claiming absolute prosecutorial immunity and failure to state a claim. The City of Anoka moved for summary judgment and to stay discovery pending a decision on the dispositive motions. The city had published its data-practices policy in 2008 and made it available on the city's website. The policy identified Timothy J. Cruikshank as the city's responsible authority and Amy T. Oehlers as the appointed designee for MGDPA requests. Scheffler finally made MGDPA requests to the city's specified responsible authority (Cruikshank) and its designee (Oehlers) on

4

June 20, 2015. He specifically asked for the city's data-retention policies, the supplement (including its metadata), contracts for legal services and indemnification agreements, and appointment letters for the responsible authority.

Oehlers responded on June 22, providing the city's data-practices policy and explaining that the city did not have a written contract or indemnification agreement with HSHA, that appointment letters were nonexistent, that the city followed the "General Records Retention Schedule for Cities," and that the city would need additional time to locate the specific documents. Within three days of receiving Scheffler's MGDPA request, Oehlers provided Scheffler with the requested data, including the supplement. She followed up with an electronic Microsoft Word version. Metadata in the electronic version shows that the supplement was created and printed on September 4, 2014, that the copy provided to Scheffler was the tenth revision, and that the file was last saved on September 11, 2014. The APD records supervisor provided a sworn affidavit stating that the supplement that Oehlers gave Scheffler was the most current version and that the city had retained no prior drafts or any other version. The district court stayed discovery pending its decision on the dispositive motions.

Scheffler moved to amend his complaint to add claims and to join Cruikshank as a party. The amendment proposed three additional claims: Count III alleged that the defendants violated Scheffler's MGDPA rights by failing to give him any reason for denying him access to the supplement; Count IV alleged that the city and Cruikshank violated the MGDPA by failing to provide earlier versions of the supplement; and Count V alleged that the city violated the MGDPA by failing to secure a written contract with

HSHA. Scheffler also moved to continue under rule 56.06. Scott and HSHA again moved to dismiss.

The district court issued an order that, in relevant part: (1) denied Scheffler's motion to continue; (2) granted Scheffler's motion to amend the complaint against Scott and HSHA, but denied the motion to amend against the city; (3) granted Scott and HSHA's motion to dismiss the amended complaint; and (4) granted the city's motion for summary judgment.

As to Counts I and III, the court relied on section 13.03's and section 13.04's requirement that data requests be directed to a responsible authority or designee. The district court stated, "It is undisputed that the Records Clerk at the Anoka Police Department, HSHA, and Scott are not a 'responsible authority' for the City." The district court rejected Scheffler's apparent-authority argument because Scheffler failed to produce any evidence that Anoka manifested any intention for Scott and HSHA to act as its MGDPA designees. The district court also noted that, while a city may allow a private person to act as its MGDPA designee under a written contract, there was no written contract between the city and Scott and HSHA.

As to Count V, the district court reasoned that Scheffler could maintain the action only if he suffered damage from the alleged MGDPA violation and was an aggrieved person. The district court found that Scheffler, "a resident of the city of Coon Rapids, fail[ed] to establish how he [was] damaged by the failure of the City of Anoka and [Scott and HSHA] to enter into a written contract for city attorney services." The district court also reasoned that an "aggrieved person," as defined by the statute, excluded Scheffler

6

because neither HSHA nor Scott was required to make the requested data available to Scheffler. It dismissed Count V, holding that Scheffler lacked standing to pursue it.

The district court denied Scheffler's motion to amend the complaint against the city and granted summary judgment in its favor. On Count I, the district court rejected Scheffler's argument that the APD records staff were effectively the MGDPA designees by virtue of apparent authority. The court explained that Scheffler made only conclusory allegations questioning the status of the information as investigative data, but that the allegations were rebutted by Scott's affidavit declaring that he made the decision not to charge Scheffler only after Scheffler made the data requests.

The district court denied Scheffler's request to amend his complaint to include Count III against the city because Scheffler's claim failed as a matter of law. The court reasoned that, because the records staff and Scott and HSHA were not responsible authorities or designees, they were not obligated to give any reason for denying access to the supplement. Likewise, it determined that the proposed amendment to Count IV against the city could not withstand summary judgment. The district court concluded that Scheffler made only the conclusory allegation that the city, Cruikshank, and Oehlers failed to give him access to all versions of the supplement based on the document's metadata reference to revisions. The district court reasoned that the bare allegation fell to the sworn declaration by the records supervisor, who stated that the city did not have any previous versions. And because the city could not provide data that it did not have, the district court held that the proposed count could not survive the pending summary-judgment motion. The city and

7

Scott and HSHA applied for taxation of costs. The district court entered judgment against Scheffler for $1,155 for the city, and $826 for Scott and HSHA. Scheffler appeals.

The parties appeared for oral argument on November 10, 2016. Scheffler later filed two purported citations to supplemental authority. Scott and HSHA objected to Scheffler's new citations, and the city filed a motion to strike Scheffler's letters and attachments.

## ISSUES

I. Did the district court err by granting the city's motion for summary judgment on Count I?

II. Did the district court err by denying Scheffler's motion to amend the complaint against the city with respect to Counts III and IV?

III. Did the district court err by dismissing the amended complaint against Scott and HSHA?

IV. Did the district court err by dismissing Count V against the city and Scott and HSHA?

V. Did the district court err by denying Scheffler's rule 56.06 motion for a continuance?

VI. Must we vacate the costs judgments?

VII. Do Scheffler's citations to supplemental authority exceed the scope of Minnesota Rule of Civil Appellate Procedure 128.05?

## ANALYSIS

Scheffler asks that we reverse the district court, vacate the cost judgments, and remand the case for further proceedings with instructions to the district court to allow him to amend the complaint against the city. The respondents ask us to affirm the district court's order in its entirety. The arguments raise multiple issues. We address each in turn.

# I

Scheffler argues that Count I, his access-denial claim, should have survived summary judgment. The city defends the district court's decision to grant the motion, arguing, among other things, that Scheffler failed to direct his request for the supplement to the proper person, who is the city's responsible authority or designee. The city's argument prevails.

Summary judgment results when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Minn. R. Civ. P. 56.03. We review a district court's grant of summary judgment de novo. *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622, 627 (Minn. 2012). This de novo review includes our interpretation of the MGDPA. *Harlow v. State Dept. of Human Servs.*, 883 N.W.2d 561, 566 (Minn. 2016). We base our review on the undisputed facts and construe any disputed evidence in favor of the nonmoving party. *Hoff v. Surman*, 883 N.W.2d 631, 633 (Minn. App. 2016).

The district court granted the city's motion for summary judgment primarily because it determined that the APD records staff were neither responsible authorities nor designees under the MGDPA. It is undisputed that Scheffler made his requests to the APD records staff. It is also undisputed that Cruikshank and Oehlers were the city's specified responsible authority and designee. Scheffler insists that the city held out the records staff as its MGDPA agents. We look to the MGDPA to decide whether Scheffler's requests to persons other than Cruikshank and Oehlers trigger the MGDPA's duty to provide data.

9

The MGDPA presumes that government data is public and details the duty to disclose data upon request. Minn. Stat. §§ 13.01, subd. 3, 13.03, subd. 3 (2016). We will address both section 13.03, subdivision 3, and section 13.04, subdivision 3 here, because both apply to Count I and to proposed Count III against the city.

Section 13.03 generally governs access to public data. It provides that all government data "collected, created, received, maintained or disseminated by a government entity" is public unless classified otherwise. Minn. Stat. § 13.03, subd. 1 (2016). That section also reveals the triggering event that obligates a governmental unit to disclose requested public data: "*Upon request to a responsible authority or designee*, a person shall be permitted to inspect and copy public government data at reasonable times and places, and, upon request, shall be informed of the data's meaning." *Id.*, subd. 3(a) (emphasis added). Subdivision 3 also repeatedly references the responsible authority and designee. For example, it states that "[t]he responsible authority or designee shall provide copies of public data upon request." *Id.*, subd. 3(c). It says, "The responsible authority . . . shall provide sufficient documentation to explain and justify the fee being charged." *Id.*, subd. 3(d). And it states, "If the responsible authority or designee [denies access], the responsible authority or designee shall [inform the requestor of its determination and cite the relevant authority.]" *Id.*, subd. 3(f).

Section 13.04 governs the "rights of individuals on whom the data is stored[.]" Minn. Stat. 13.04, subd. 1 (2016). This section similarly premises access to data on a request to the responsible authority or designee:

10

> Upon request *to a responsible authority or designee*, an individual shall be informed whether the individual is the subject of stored data on individuals, and whether it is classified as public, private or confidential. Upon further request, an individual who is the subject of stored private or public data on individuals shall be shown the data without any charge and, if desired, shall be informed of the content and meaning of that data.

*Id.*, subd. 3 (emphasis added). As in section 13.03, section 13.04 contains numerous other references concerning requests to, and the duties of, the responsible authority or designee. For example, it directs, "The responsible authority or designee shall provide copies of the private or public data upon request by the individual subject of the data." *Id.* It also says, "The responsible authority or designee shall comply immediately, if possible . . . or within ten days of the date of the request . . . if immediate compliance is not possible." *Id.* And it declares that for an individual who is the subject of the stored data to contest it, that person must "notify in writing the responsible authority." *Id.*, subd. 4(a) (2016).

In addition to its repeated focus on the responsible authority and designee, the MGDPA also defines exactly who those people are. The responsible authority "in any political subdivision means the individual designated by the governing body of that political subdivision as the individual responsible for the collection, use, and dissemination of any set of data on individuals, government data, or summary data, unless otherwise provided by state law." Minn. Stat. § 13.02, subd. 16(b) (2016). And a designee is "any person designated by a responsible authority to be in charge of individual files or systems containing government data and to receive and comply with requests for government data." *Id.*, subd. 6 (2016).

11

The district court relied on these provisions when it held that "the right to access is triggered only upon a request to a responsible authority or designee." Scott and HSHA and the city ask us to read sections 13.03 and 13.04 similarly, arguing that data-access rights and the government entity's corresponding obligations under the MGDPA attach only on a request to the specified responsible authority or designee. Scheffler acknowledges that Cruikshank and Oehlers are the city's responsible authority and designee, respectively. But he proposes that MGDPA data-access rights and duties arise even when the requests are directed at someone other than the specified responsible authority or designee.

Scheffler derives his position from a common-law apparent-authority theory, arguing that the city "held Scott, HSHA, and the [APD] record manager and clerks out as their agents in relation to Scheffler." Scheffler cites no MGDPA provision or any case interpreting the MGDPA as incorporating agency principles into its requirements. He directs us instead to a portion of the city's data practices policy, which states:

> Other positions responsible for maintenance of City records are as apparent or assigned. Each Department Head shall be responsible for the maintenance and dissemination of information that pertains to their department. . . .

Scheffler maintains that this city policy statement directed him to make his data request to the APD records staff. He misreads the policy. The policy does not suggest any attempt to rely on apparent authority to displace a requestor's duty to make his data requests to the specified responsible authority or designee. The policy's first sentence—the only sentence that references "positions" that might be "apparent"—speaks only about the "maintenance" of city records, not the disclosure of public data. And even if we were to paraphrase the

12

second sentence's clause, the "dissemination of information that pertains to [each] department," as the disclosure of public data to persons who request it under the MGDPA (a paraphrase that would take considerable contortion), the sentence puts the duty only on "[e]ach [d]epartment [h]ead," not on each department clerk.

The city presents another reason to reject Scheffler's apparent-authority theory. It correctly emphasizes that the Minnesota Administrative Rules require responsible authorities and designees to be appointed *by name*. *See* Minn. Admin. R. 1205.0200, subp. 14.B (2015) (requiring cities to appoint an employee as the responsible authority); Minn. Admin. R. 1205.1200, subp. 2 (2015) (requiring public document to identify the responsible authority or the designee who is responsible for answering questions about the MGDPA); *Id*., subp. 3 (2015) (requiring public document to identify the name, title, and address of designees appointed by the responsible authority). The statutory and regulatory requirements inform us that the MGDPA does not contemplate creating any right or imposing any duty under the act based on mere apparent authority.

Scheffler relies on a federal district court order and contends, "The [MGDPA] does not require all requests for access to go to the [r]esponsible [a]uthority, nor does it require the [r]esponsible [a]uthority to have knowledge of all requests for access to data, let alone respond to all requests." Scheffler cites *O'Neal v. Moore*, No. 06–2336 ADM/JSM, 2008 WL 4417327, at *15 (D. Minn. Sept. 24, 2008) as support. Federal district courts do not bind this court, and even if they did, *O'Neal* does not support Scheffler's proposition. *O'Neal* commented that "[t]here is nothing in the MGDPA that dictates who must ultimately respond to [a MGDPA] request." *Id.* That persons other than responsible

13

authorities or designees might ultimately disclose requested data does not mean that other persons assume the role of an MGDPA responsible authority or designee.

Scheffler also points us to a number of administrative opinions, which likewise are not binding on us and are persuasive only insofar as they address ambiguities in the MGDPA. If the statutory language requiring data requests to be made to the responsible authority or designee is unambiguous, advisory opinions are entitled to *no* deference. *See Schwanke v. Minn. Dep't of Admin.*, 851 N.W.2d 591, 594 n.1 (Minn. 2014); *see also* Minn. Stat. § 13.072, subd. 2 (2016) ("Opinions issued by the commissioner under this section are not binding . . . .").

The MGDPA has its complexities, but nothing in sections 13.03 and 13.04 is ambiguous concerning to whom one must make a data request. They plainly require that data requests be made to a responsible authority or designee. The relevant advisory opinions reinforce this general proposition. *See, e.g.*, Op. Comm'r Admin. 96-051 (Dec. 2, 1996) ("[A]n individual's rights under Chapter 13 are invoked when the individual directs requests for access to data to the responsible authority . . . ."); Op. Comm'r Admin. 98-025 (May 15, 1998) ("Sections 13.03 and 13.04 require a data requestor to direct requests to the responsible authority of the involved entity. Both sections state, 'Upon request to a responsible authority [a person shall gain access to government data] . . . .'"); Op. Comm'r Admin. 00-034 (Aug. 15, 2000) ("[S]ubdivision 3 also requires that any requests for government data be made to the responsible authority of the entity.").

It is true that, in Opinion of Commissioner of Administration 96-051, the commissioner opined, "It is not reasonable for the City, long after the fact, to argue that it

had no obligation to provide W with the data he/she requested just because W did not direct his/her request to the responsible authority." But the commissioner continued, "Had the City provided W with a copy of its data practices policies and procedures, regarding how a data subject may gain access to data about him/herself maintained by the City, and asked W to follow those procedures, complicating factors could have been avoided." *Id.* Here, the city made its data practices policy available to Scheffler on its website. *See* Minn. Stat. § 13.025, subd. 4 (2016).

Other advisory opinions give mixed treatment of this issue. In Opinion of Commissioner of Administration 98-025, the commissioner opined that a school district violated the MGDPA's timeliness requirements, but he did so only under the assumption that the responsible authority received the data request. In Opinion of Commissioner of Administration 00-034, the commissioner could not determine whether the data request had been made to the responsible authority, but he advised, "If Mr. Wingen did not make his request to the responsible authority, he should do so." In Opinion of Commissioner of Administration 01-057 (July 11, 2001), the commissioner remarked that, where a city's attorney affirmatively responded to data-practices requests and represented himself with the authority to respond, the failure to offer a response under the MGDPA was not an appropriate response. But in this opinion, the commissioner also advised that, once the responsible authority became apparent, the requestor should redirect her data-practices request to the responsible authority. *Id.*

In sum, sections 13.03 and 13.04 expressly require persons to make their data-practices requests to a responsible authority or designee. The administrative opinions

15

recognize this prerequisite to the duty to provide the data and to the right to receive it. Any ambivalence in administrative opinions on this point does nothing to alter the requirement. These roles of responsible authority or designee should be, and in this case were, assigned to specific, publicly identified individuals. The law leaves no room for Scheffler's apparent-authority theory.

We hold that, under Minnesota Statutes sections 13.03, subdivision 3, and 13.04, subdivision 3, a person seeking data from a government entity must make his request to the government entity's specified responsible authority or designee before claiming an MGDPA failure to provide data or failure to provide a reason for denial. A government entity is not liable under the act for an alleged violation of these sections if the requestor did not satisfy this prerequisite. We also hold that the MGDPA does not recognize responsible authorities or designees by operation of common-law apparent-authority principles. Because the APD records staff were not the city's specified responsible authority or designees, the district court properly granted summary judgment to the city on Count I.

## II

The district court denied Scheffler's motion to amend his complaint against the city on Counts III and IV because the claims could not survive summary judgment. "We review a district court's denial of a motion to amend a complaint for an abuse of discretion." *Johnson v. Paynesville Farmers Union Coop. Oil Co.*, 817 N.W.2d 693, 714 (Minn. 2012).

A district court should generally allow an amendment if the adverse party would not be prejudiced. *Id*. But it is not an abuse of discretion to refuse an amendment that would

16

not survive summary judgment. *Id.* Because the district court determined that the proposed amended counts would be dismissed by summary judgment, we review de novo and ask whether any genuine issue of material fact precludes summary judgment and whether the district court properly applied the law. *Mattson Ridge*, 824 N.W.2d at 627.

### A.    *Denial of Motion to Amend Against the City on Count III*

Count III, as proposed, alleged that the city violated Scheffler's right to access data under section 13.03, subdivision 3(f). If a responsible authority or designee determines that the requested data's classification prevents its public access, the responsible authority or designee must inform the requestor of this determination and the reason for denying access. Minn. Stat. § 13.03, subd. 3(f). The district court concluded that the proposed Count III against the city failed as a matter of law because the APD records staff were neither the city's responsible authorities nor designees. We have already held that data-access requests must be made to the entity's responsible authority or designee before a person denied data may prevail in an MGDPA suit. For the same reasons we affirmed summary judgment on Count I, we hold that the district court properly denied Scheffler's motion to amend Count III against the city.

### B.    *Denial of Motion to Amend Against the City on Count IV*

Proposed Count IV alleged that the city and Cruikshank violated the MGDPA by failing to provide earlier versions of the requested supplemental police report. The district court determined that Scheffler's proposed Count IV could not survive summary judgment because the city could not be liable for failing to provide data that it lacked. Scheffler argues that there are disputed material facts regarding the existence of earlier versions of

17

the supplement. He points to the metadata that shows that a version of the supplement was printed on September 4, 2014. The city argues that it has shown that no prior version exists, that it cannot provide a document that does not exist, and that failure to provide a nonexistent document cannot support an MGDPA claim.

A disputed fact is material if its resolution would affect the outcome of the case. *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976). There is no *genuine* issue for trial if the nonmoving party "presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). But a party need not show substantial evidence to prevent summary judgment. *Schroeder v. St. Louis Cty*, 708 N.W.2d 497, 507 (Minn. 2006).

The city apparently accepts the allegation that the document's metadata shows prior modifications of the report. The APD records manager swore in an affidavit that the version of the supplement provided was the only version in the city's possession. But Scheffler's claim is that "there is the paper copy printed on the day it was signed by [Captain] Nolan, September 4, 2014, and the version which was edited days later, on September 11, 2014." Scheffler "wants the version given to Scott and the version *Scheffler* received."

The metadata implies that a previous version of the supplement once existed. Scheffler finally reached the city's responsible authority and designee months after the printing implied by the metadata. But the record does not suggest that, by the time Scheffler made his request to the responsible authority and designee, the city then possessed and

18

withheld an earlier version of the supplement. The metadata creates the inference that an earlier version once existed but promotes only a speculative doubt regarding its continued existence at the time of Scheffler's proper request. The city presented the district court with an unchallenged affidavit swearing that it provided Scheffler the only extant version. The insufficiently supported claim would not have survived summary judgment, and the district court properly denied Scheffler's motion to add Count IV against the city.[1]

### III

The district court dismissed Counts I and III of the amended complaint against Scott and HSHA because Scott and HSHA were neither the city's responsible authorities nor designees, Scheffler made no showing that Scott or HSHA were agent-designees, and no written contract authorized them to serve as the MGDPA designee. Scheffler argues that he stated claims that would properly survive a rule 12.02(e) motion to dismiss for failure to state a claim. He also apparently argues that the district court improperly relied on Scott's affidavit in considering Scott and HSHA's motion to dismiss. When a district court dismisses a case for failure to state a claim, we review the legal sufficiency of the claim de novo. *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682, 692 (Minn. 2014).

---

[1] Scheffler implies the city had to maintain all revisions of the supplement. He points us to nothing in the MGDPA that creates a general duty to maintain versions of government data. We have found provisions in the MGDPA that mandate the retention of government data under *specific* circumstances. *See, e.g.*, Minn. Stat. § 13.825, subd. 3 (2016) (mandating the retention of portable recording system data under certain circumstances); Minn. Stat. § 13.87, subd. 1(b) (2016) (requiring that certain data be maintained by the BCA as public for 15 years). Data retention generally is covered by other statutes. *See, e.g.*, Minn. Stat. § 138.17 (2016); Minn. Stat. § 15.17 (2016).

**A.** *Alleged Conversion from Motion to Dismiss to Motion for Summary Judgment*

Scheffler appears to assert that the district court erred by considering Scott's affidavit in dismissing Scheffler's claims against Scott and HSHA. He argues that the district court sua sponte converted Scott and HSHA's motion to dismiss to a rule 56.03 summary-judgment motion. We do not agree.

"If, on a motion asserting the defense that the pleading fails to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Minn. R. Civ. P. 12.02. Scheffler points only to the district court's consideration of Scott's affidavit in the portion of the order addressing the city's summary-judgment motion. But the court did not mention the affidavit in the context of Scott and HSHA's motion to dismiss. And when the district court's order does not consider evidence outside the pleadings, we need not treat a motion to dismiss as one for summary judgment. *See In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 497 (Minn. 1995). Scheffler's argument fails.

**B.** *Dismissal for Failure to State a Claim On Which Relief Can Be Granted*

A party may move to dismiss claims when the complaint fails to state a claim on which relief can be granted. Minn. R. Civ. P. 12.02(e). In reviewing whether a complaint states a claim, we consider as true those facts alleged in the complaint, construing reasonable inferences in favor of the nonmoving party. *Finn. v. Alliance Bank*, 860 N.W.2d

20

638, 653 (Minn. 2015). A district court may dismiss under rule 12.02 if "it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 602 (Minn. 2014) (quotation omitted). We are not bound by legal conclusions stated in a complaint. *Id.* at 603. The question here is whether Scheffler's alleged facts, taken as true, combined with reasonable inferences drawn in Scheffler's favor, establish a claim entitling Scheffler to relief under the MGDPA.

The district court addressed and rejected Scheffler's agency theory as a matter of fact by concluding that Scheffler produced no evidence that the city manifested any intention for Scott or HSHA to act as its responsible authority or designee. But we have already rejected as a matter of law Scheffler's argument that apparent authority applies to sections 13.03 and 13.04 of the MGDPA as to the APD records staff. The district court likewise properly rejected Scheffler's agency argument as to Scott and HSHA.

The district court considered first that "[i]t is undisputed that . . . [Scott and HSHA] are not a 'responsible authority' for the City." The district court implied that Scheffler's failure to direct his initial requests to the city's responsible authority or designee supported dismissal of Counts I and III against Scott and HSHA. But the district court explicitly relied on Minnesota Statutes section 13.05, subdivision 11 (2016), which provides as follows:

> (a) If a government entity enters into a contract with a private person to perform any of its functions, all of the data created, collected, received, stored, used, maintained, or disseminated by the private person in performing those functions is subject to the requirements of this chapter and the private person must comply with those requirements as if it were a government entity. All contracts entered into by a

21

government entity must include a notice that the requirements of this subdivision apply to the contract. Failure to include the notice in the contract does not invalidate the application of this subdivision. The remedies in section 13.08 apply to the private person under this subdivision.

(b) This subdivision does not create a duty on the part of the private person to provide access to public data to the public if the public data are available from the government entity, except as required by the terms of the contract.

The district court commented, "There is no written contract between Scott or HSHA and the City of Anoka." It did not take into account section 13.05, subdivision 11(a)'s clear language: "Failure to include the notice in the contract does not invalidate the application of this subdivision. The remedies in section 13.08 apply to the private person under this subdivision." So if the district court here suggested that the lack of a contractual delegation of responsible-authority duties means no such duties exist under section 13.05, subdivision 11(a), regardless of whether the data are available from the government entity, we think it was mistaken.

But we affirm anyway. The district court did not address Scott and HSHA's arguments that attorneys representing a governmental entity are not subject to the MGDPA, or that Scott and HSHA enjoyed prosecutorial immunity. Scott correctly points out that we may consider these alternative bases. *See Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 331 (Minn. 2010) (a respondent on appeal may stress any sound reason for affirmance). For the following reasons, we are satisfied that Scott and HSHA had no duty to provide the requested data.

The MGDPA does not expose government attorneys to liability for their alleged failure to provide data under the MGDPA:

> Notwithstanding the provisions of this chapter and section 15.17, the use, collection, storage, and dissemination of data *by an attorney acting in a professional capacity for a government entity* shall be governed by statutes, rules, and professional standards concerning discovery, production of documents, introduction of evidence, and professional responsibility; provided that this section shall not be construed to affect the applicability of any statute, other than this chapter and section 15.17, which specifically requires or prohibits disclosure of specific information by the attorney, nor shall this section be construed to relieve any responsible authority, other than the attorney, from duties and responsibilities pursuant to this chapter and section 15.17.

Minn. Stat. § 13.393 (2016) (emphasis added). Scott and HSHA, as contracting city attorneys and prosecutors, were "acting in a professional capacity" representing the city as legal counsel, and the requested police report pertained to a police investigation concerning which they were obligated to make prosecutorial decisions. They were not, by contrast, under contract to serve as the city's responsible authority. As a result, their "use, collection, storage, and dissemination" of the supplemental report was governed by the "statutes, rules, and professional standards concerning discovery, production of documents, introduction of evidence, and professional responsibility," not by the MGDPA.

Because Scott and HSHA were attorneys acting only in a professional capacity representing and advising the city, rather than as responsible authorities or designees, Scheffler's claims fail as a matter of law. We affirm the district court's dismissal of Counts I and III against Scott and HSHA.

23

Count V alleged that the city and Scott and HSHA violated the MGDPA by failing to have a written contract for services. Scheffler sought an "injunction against continued payment for City Attorney services until [Scott and HSHA and the city] agree, sign, and execute a written City Attorney Representation Agreement." The district court dismissed the claim without reaching its merits, concluding that Scheffler lacked standing to make it because he failed to demonstrate that he was injured by the city's failure to maintain a written contract with Scott and HSHA.

Whether a party has standing is a question of law we review de novo. *In re Gillette Children's Specialty Healthcare*, 883 N.W.2d 778, 784 (Minn. 2016). Standing is a jurisdictional issue. *Garcia-Mendoza v. 2003 Chevy Tahoe*, 852 N.W.2d 659, 663 (Minn. 2014). The lack of standing bars judicial consideration of a claim. *Id.* A party acquires standing by statute or as an aggrieved party suffering an injury-in-fact. *Id.* To demonstrate an injury-in-fact, the plaintiff must point to an injury that is fairly traceable to the defendants' challenged action and that is likely to be redressed by a favorable decision. *Id.*

Scheffler's complaint alleged that the city's and Scott and HSHA's failure to maintain a written contract "compromises the integrity of the Act and diminishes trust and confidence of the public in their civic officials and private [attorneys] contracted to provide government services as Anoka City Attorney." He fails to suggest how the city's payments to HSHA for prosecutorial services without a written contract injured him. Scheffler's alleged injuries, if any, result from the respondents' failure to provide data, not their failure to execute a written contract. We do not address the district court's determination that

24

Scheffler was not an "aggrieved person" under the MGDPA. *See* Minn. Stat. 13.08, subd. 4(a) (2016); *Wiegel v. City of St. Paul*, 639 N.W.2d 378, 384 (Minn. 2002) (defining an aggrieved person as one who is improperly denied data that is available as a matter of right). Because Scheffler did not make his initial requests to the responsible authority or designee, there was no improper denial rendering him an aggrieved person. The district court properly dismissed Count V.

## V

The district court denied Scheffler's rule 56.06 motion to continue because the information sought by Scheffler would not have changed the result. Scheffler implies that the district court erred by denying his opportunity for meaningful discovery, which he requested in his rule 56.06 motion. Scheffler asserts only generally that the "the district court erred in refusing to grant [his] continuance motion for discovery." An assignment of error on mere assertion, unsupported by argument or authority, is forfeited and need not be considered unless prejudicial error is obvious on mere inspection. *Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971). We have carefully considered the circumstances and we see no obvious error. And because the district court did not convert Scott and HSHA's motion to dismiss into a summary-judgment motion, Scheffler's implied argument regarding additional discovery fails; additional discovery could not have saved Scheffler's claims from dismissal.

## VI

The city and Scott and HSHA applied for taxation of costs. The district court entered judgment against Scheffler for $1,155 for the city, and $826 for Scott and HSHA. Scheffler

argues that any reversal or remand requires vacation of the cost judgment against him. Because we affirm the summary judgment and dismissal, we need not consider Scheffler's argument.

## VII

Scheffler filed with this court two purported citations to supplemental authority, Scott and HSHA objected, and the city moved to strike. We grant the city's motion to strike. A party may provide citations to "pertinent and significant" authorities in a letter stating, "*without argument*[,] the reasons for the supplemental citations." Minn. R. Civ. App. P. 128.05 (emphasis added). Scheffler's offering exceeds the supplemental filing allowed by the rule. It includes an advisory opinion and a district court order—both containing text that Scheffler has selectively highlighted. It also includes the supreme court's opinion in *Burks v. Metropolitan Council*, 884 N.W.2d 338 (Minn. 2016), the Metropolitan Council's data-retention policy, and the civil complaint filed in the *Burks* case. Scheffler made various arguments with this material. We have accepted as supplemental authority Scheffler's citation directing our attention to the *Burks* opinion, but we otherwise grant the city's motion to strike Scheffler's submission of supplemental authority for failure to comply with rule 128.05.

## D E C I S I O N

The district court properly granted the respondents' motions for summary judgment and dismissal, and it properly denied Scheffler's motions to amend and for a continuance. Scheffler's denial-of-data-access and reason-for-denial claims against the city fail as a matter of law under the MGDPA. The same claims against Scott and HSHA fail because

26

Scott was an attorney whose disclosure of data is not controlled by the MGDPA. Scheffler's denial-of-data-access claim based on previous versions of the revised supplemental report fails on the undisputed fact that the city had no other version of the supplement at the time he made the request to the responsible authority and designee. Count V fails because Scheffler has no standing to maintain the claim. We leave intact the cost judgment and grant the city's motion to strike Scheffler's purported citations to supplemental authority.

**Affirmed; motion granted.**