*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0932**

Request to Approve Issuance of State Taconite Iron Ore Mining Leases
in Itasca County to Cleveland-Cliffs Minnesota Land Development LLC.

**Filed March 18, 2024
Appeal dismissed; motion denied
Bjorkman, Judge**

Minnesota Department of Natural Resources

Jessica J. Nelson, Kimberly Slay Holmes, Johanna R. Hyman, Matthew E. Cavanaugh, Spencer Fane LLP, Minneapolis, Minnesota (for relator Mesabi Metallics Company, LLC)

Keith Ellison, Attorney General, Oliver J. Larson, Assistant Attorney General, St. Paul, Minnesota (for respondent department)

W. Anders Folk, Jones Day, Minneapolis, Minnesota (for respondent Cleveland-Cliffs Minnesota Land Development LLC)

Matti R. Adam, Itasca County Attorney, Michael J. Haig, Chief Assistant County Attorney, Grand Rapids, Minnesota (for amicus curiae County of Itasca)

Kathleen M. Brennan, McGrann Shea Carnival Straughn & Lamb, Chartered, Minneapolis, Minnesota (for amicus curiae City of Nashwauk)

Considered and decided by Larkin, Presiding Judge; Ross, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Relator Mesabi Metallics Company LLC (Mesabi) challenges the decision of respondent Minnesota Department of Natural Resources (DNR) to issue 30 negotiated

mining leases to respondent Cleveland-Cliffs Minnesota Land Development LLC (Cliffs). Mesabi asserts various errors in DNR's decision, but Cliffs argues that Mesabi lacks standing to challenge the decision. Because we agree with Cliffs, we dismiss the appeal.

**FACTS**

The State of Minnesota owns 2,662.29 acres of land containing taconite iron ore in Nashwauk, Itasca County. Mesabi and Cliffs are competing mining companies that also own and lease land and mineral rights in Nashwauk.

Starting in 2004, DNR leased the state lands and mineral rights in Nashwauk to Mesabi. Mesabi planned to use the leased mineral rights together with mineral rights that it owns for a taconite mining and pelletization project. The leases included various performance requirements. Mesabi obtained a permit to mine and other permits for the project in 2007. But Mesabi experienced a series of delays, and DNR terminated the leases in May 2021. Mesabi brought an action against DNR asserting breach-of-contract and other claims. The district court granted judgment in DNR's favor, and this court affirmed. *Mesabi Metallics Co. v. Minn. Dep't of Nat. Res.*, No. A22-0410, 2022 WL 4668855 (Minn. App. Oct. 3, 2022), *rev. denied* (Minn. Jan. 17, 2023).

On January 18, 2023, Cliffs applied to DNR for 30 negotiated mining leases at the Nashwauk site—the leases previously held by Mesabi. *See* Minn. Stat. § 93.1925 (2022) (permitting DNR to issue negotiated mining leases under certain circumstances, with approval of Executive Council).[1] Cliffs proposed to "mine and rail" the Nashwauk ore to

---

[1] "The Executive Council consists of the governor, lieutenant governor, secretary of state, state auditor, and attorney general." Minn. Stat. § 9.011 (2022).

its existing Hibbing Taconite facility for processing, in order to extend the "mine life" of Hibbing Taconite. Mesabi also applied for the Nashwauk leases, as did three other mining companies.

On May 4, DNR announced that it would recommend to the Executive Council that all 30 mining leases be issued to Cliffs. At the same time, it denied the applications from Mesabi and the other mining companies. In denying Mesabi's application, DNR explained that because of Mesabi's "history of lease defaults and the outstanding rent and royalty payments owed to the State under the terms of past leases, . . . it is not in the State's best interest to entertain an application for negotiated leases from the company."

At the Executive Council's May 25 meeting, DNR presented its recommendation to award Cliffs the leases. The Executive Council also heard from supporters of the recommendation, including the president of the local union at Hibbing Taconite and representatives from the Cities of Hibbing and Chisholm, and its opponents, including Mesabi and amici curiae County of Itasca and City of Nashwauk. The Executive Council approved the recommendation, and DNR issued the leases the following day.

Mesabi appealed by writ of certiorari. This court questioned whether it has jurisdiction and whether Mesabi has standing to bring the appeal. A special-term panel concluded that DNR's decision to issue Cliffs the mining leases is appealable under Minn. Stat. § 93.50 (2022), but deferred the question of standing to this panel.

**DECISION**

Standing is a jurisdictional prerequisite that we determine as a matter of law. *Scheffler v. City of Anoka*, 890 N.W.2d 437, 451 (Minn. App. 2017), *rev. denied* (Minn.

3

Apr. 26, 2017).  To have standing, "a party must have a sufficient stake in the controversy to seek relief from the court."  *Webb Golden Valley, LLC v. State*, 865 N.W.2d 689, 693 (Minn. 2015).  Mere "participation in agency proceedings" or "'interest' in the problem" is insufficient to confer standing.  *In re Pappas Senate Comm.*, 488 N.W.2d 795, 798 (Minn. 1992).  Rather, a party has standing when (1) it has suffered an "injury-in-fact," or (2) it is "the beneficiary of some legislative enactment granting standing."  *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 624 (Minn. 2007).  Mesabi contends that it has both types of standing.  We address each in turn.

**Injury-in-Fact Standing**

An injury-in-fact is "a concrete and particularized invasion of a legally protected interest."  *Enright v. Lehmann*, 735 N.W.2d 326, 329 (Minn. 2007).  To confer standing, an injury-in-fact must be both "fairly traceable" to the challenged decision and "likely to be redressed" by a favorable decision.  *Scheffler*, 890 N.W.2d at 451.

Mesabi argues that it has standing based on injuries-in-fact because (1) awarding the leases to Cliffs undermines Mesabi's ability to compete fairly with Cliffs; (2) the leases are in and around the area where Mesabi has a mining permit and some infrastructure for its mining project, and granting the leases to Cliffs will impede Mesabi's completion of the project; (3) Cliffs is "weaponizing" the leases and interfering with Mesabi's property rights by attempting to preclude Mesabi from accessing Mesabi's own land; and (4) Mesabi has been deprived of the opportunity to obtain the leases through a public sale.  We are not persuaded because Mesabi has not demonstrated that its claimed injuries are traceable to

4

the decision to award the leases to Cliffs or that they would be redressed by reversal of that decision.

Regarding traceability, Mesabi makes no showing that any of its injuries flow from DNR's decision to award the leases to Cliffs. Mesabi's claimed injuries to its competitive standing and ability to complete its mining project result not from Cliffs acquiring the leases but from Mesabi losing them. That loss is attributable to DNR's separate decisions to terminate Mesabi's leases in 2021 and to deny Mesabi's application to reacquire the leases in 2023, neither of which is at issue in this appeal.[2] The source of Mesabi's claimed injury to its property rights also lies elsewhere because it is, on its face, attributable to Cliffs' claimed interference with Mesabi's access to its own property, not DNR's award of the leases to Cliffs.

We are similarly unconvinced by Mesabi's claim that it lost an opportunity to obtain the leases through a public sale because of the decision to award the leases to Cliffs. A public sale is DNR's only option for issuing mining leases if it does not issue negotiated mining leases. *See* Minn. Stat. § 93.16(a) (2022) ("Except as otherwise expressly provided by law, leases for iron ore or other minerals belonging to the state shall be issued only upon public sale . . . ."). But as Mesabi acknowledged at oral argument, nothing requires DNR

---

[2] We also observe that Cliffs' receipt of a benefit that both companies sought is not a cognizable injury separate from Mesabi's loss of that benefit because a business's "economic injury" from "lawful competition" is insufficient to confer standing unless the business has protection *from* competition. *Hardin v. Kentucky Utilities Co.*, 390 U.S. 1, 5-6 (1968); *see also Twin Ports Convalescent, Inc. v. Minn. State Bd. of Health*, 257 N.W.2d 343, 346 (Minn. 1977) (concluding that business had standing to challenge decision to issue license to competitor when a statute protected existing services from competition).

to conduct a public sale. Nor, if DNR conducted a public sale, would it be required to accept Mesabi's bid because DNR has broad discretion to "reject any and all bids." Minn. Stat. § 93.17, subd. 3(a) (2022). And given DNR's determination that issuing mining leases to Mesabi is not in the public interest, DNR would almost certainly reject a Mesabi bid for the leases.

Just as Mesabi's claimed injuries cannot be traced to the decision to award the leases to Cliffs, reversing that decision will not redress them. A reversal would mean only that Cliffs no longer holds the 30 negotiated mining leases; it would not award the leases to Mesabi. Nothing in the record suggests that reversal of DNR's decision would enable Mesabi to acquire any of the leases, by negotiation or public sale. Indeed, the thousands of pages of record point unerringly the other way and support DNR's assertion in its brief that "[n]o matter the result here, the DNR and the State won't be granting new leases to Mesabi."

**Statutory Standing**

Mesabi also asserts that it has statutory standing because Minn. Stat. § 93.50 permits "[a]ny person aggrieved by any final order, ruling, or decision of the [DNR] commissioner [to] obtain judicial review of such order, ruling, or decision . . . ." This is a broad grant of statutory standing. *See Lorix*, 736 N.W.2d at 630 (describing comparable statutory language in antitrust statute as "apparently limitless"). But it still requires some connection between the claimed injury and the challenged action. *See id.* at 630-31; *see also Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 18 (Minn. App. 2003) (concluding that statutory grant of standing to an "aggrieved" person extends to a

6

person adversely affected by the challenged action).  In short, Minn. Stat. § 93.50 also requires that Mesabi's claimed injuries be traceable to the decision it challenges in this appeal—DNR's decision to award the leases to Cliffs.  But as discussed above, Mesabi has failed to demonstrate such a link.[3]

In sum, Mesabi has not demonstrated that it has suffered any injury traceable to the decision to award the leases to Cliffs and redressable by reversal of that decision. Accordingly, Mesabi has neither injury-in-fact standing nor standing as an aggrieved party under Minn. Stat. § 93.50.  Because standing is a jurisdictional requirement, we dismiss the appeal.[4]

**Appeal dismissed; motion denied.**

---

[3] In addition to our discussion above, we note that DNR's decision to award the leases to Cliffs did not change the marketplace in which both mining companies have long operated. *Cf. In re Black*, 522 N.W.2d 352, 355 (Minn. App. 1994) (concluding that existing trust company had statutory standing as "aggrieved" person to challenge the decision to license a new trust company in its vicinity), *rev. denied* (Minn. Nov. 29, 1994).

[4] Cliffs included in its addendum, and cited in its brief, an unofficial transcript of the meeting at which the Executive Council approved issuing the leases to Cliffs.  After we declined to add the transcript to the appellate record, Mesabi moved to strike the transcript from Cliffs' addendum and all references to it in Cliffs' brief.  Because we dismiss the appeal without addressing the parties' arguments as to the merits of DNR's decision, we deny the motion as moot.  *See Drewitz v. Motorwerks, Inc.*, 728 N.W.2d 231, 233 n.2 (Minn. 2007) (denying motion to strike as moot because the court did not rely on the material in question).