CITIZENS FOR A BALANCED CITY, et al., Appellants,

v.

PLYMOUTH CONGREGATIONAL CHURCH, Defendant,

Plymouth Church Neighborhood Foundation, Respondent,

City of Minneapolis, Respondent.

No. A03–190.

Court of Appeals of Minnesota.

Dec. 2, 2003.

Michael O. Freeman, DeAnne M. Hilgers, Courtney M. Rogers, Lindquist Vennum, P.L.L.P., Minneapolis, for appellants.

Mary Cullen Yeager, Deborah J. Mackay, Faegre Benson, L.L.P., Minneapolis, for respondent Plymouth Church Neighborhood Foundation.

Jay M. Heffern, Minneapolis City Attorney, Carol E. Lansing, Assistant City Attorney, Minneapolis, for respondent City of Minneapolis.

Considered and decided by
KLAPHAKE, Presiding Judge;
SCHUMACHER, Judge; and
PORITSKY, Judge.*

## OPINION

ROBERT H. SCHUMACHER, Judge.

Citizens for a Balanced City and numerous individuals (collectively Citizens) appeal from the district court's summary judgment, which found that respondent City of Minneapolis had not acted arbitrarily, capriciously, or unreasonably in granting respondent Plymouth Neighborhood Church Foundation a spacing ordinance waiver, a conditional use permit, and a maximum occupancy variance. We affirm.

## FACTS

In early 2001, the Foundation, a faith-based-non-profit organization, purchased an abandoned 140–bed nursing home located at 1920 LaSalle Avenue. The Foundation intended to convert the space into the "Lydia House," a supportive housing facility, consisting of 40 efficiency apartments

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

designed as permanent homes for adult men and women who are currently homeless or living in temporary shelters and are disabled because of mental illness, chemical dependency, or HIV/AIDS. The Foundation considered 1920 LaSalle a prime location because Plymouth Congregational Church is located across the street and already operates related programs, the proposed residents currently reside in the area, and Simpson Housing Services—the supportive services provider—is in close proximity. The Foundation considered the location unique and did not believe an acceptable alternative location existed.

Because the proposed location was within an Office Residence 2 zoning district, the Foundation was required to obtain relief from certain zoning ordinances before proceeding. First, supportive housing is allowed in an Office Residence 2 zoning district as a conditional use, which requires a permit from the city. Second, a new supportive housing facility must be located at least a quarter-mile from certain types of existing facilities. There is no procedure for obtaining a variance from this spacing requirement. Third, the Foundation must obtain a variance from Minneapolis because Lydia House would be serving more than 32 residents.

At least seven facilities of the type covered by the spacing requirement currently exist within a quarter-mile of 1920 LaSalle Avenue. Those facilities include (1) 180 Degrees Inc., a community correctional facility; (2) People Incorporated Nancy Page Program, a community residential facility; (3) Oak Grove Residential Treatment, a community residential facility; (4) NU Way House, a community residential facility; (5) Home Away for Girls, a community residential facility; (6) Project Foundation, a community residential facility; and (7) Children's Residential Treatment, a community residential facility.

None of these seven facilities appear to offer permanent housing to Lydia House's proposed residents.

In 2001, Foundation filed an application for a conditional use permit and a maximum occupancy variance and sought a spacing ordinance waiver, alleging the Fair Housing Amendment Act prevented the application of the spacing ordinance in this instance. Area neighborhood organizations sponsored the Lydia House Task Force to evaluate the potential impact Lydia House might have on the neighborhoods. The task force concluded Lydia House would have a detrimental impact and submitted a report to the city planning department stating the conditional use permit, variance, and waiver should not be granted. The planning department prepared a report detailing the facts and arguments the city planning commission should consider.

The commission reviewed the Foundation's application and the planning department's report and held public hearings. At the conclusion of the final hearing, the commission voted to grant a spacing ordinance waiver as a reasonable and necessary accommodation under the Fair Housing Amendment Act, to grant the conditional use permit, to grant the maximum occupancy variance, and to adopt the planning department's findings of fact.

Citizens appealed the planning commission's decision to the Minneapolis City Council. In November 2001, a public hearing was held before the city council's zoning and planning committee. The committee subsequently recommended that the city council deny the appeal and directed staff to prepare findings of fact. The city council unanimously adopted these findings and denied the appeal. Included in these finding was a conclusion that the Fair Housing Amendment Act mandated

Minneapolis grant a spacing ordinance waiver because it was a necessary, reasonable accommodation for disabled persons.

Following the city council's decision, Citizens appealed to the Hennepin County District Court. The parties submitted cross-motions for summary judgment. In January 2003, the district court granted the Foundation's motion for summary judgment.

## ISSUES

1. Do Citizens have standing to challenge Minneapolis's zoning decisions?

2. Was Minneapolis's grant of a spacing ordinance waiver to the Foundation a reasonable action required by the Fair Housing Amendment Act?

3. Was Minneapolis's grant to the Foundation of a conditional use permit and a maximum occupancy variance reasonable?

## ANALYSIS

1. Minneapolis challenges Citizens' standing to challenge its zoning decisions arguing Citizens has not complied with general standing doctrine and that they are not "aggrieved persons" under Minn.Stat. § 462.361, subd. 1 (2002). When a party does not have standing, a court does not have jurisdiction to hear the matter. *Annandale Advocate v. City of Annandale,* 435 N.W.2d 24, 27 (Minn.1989) (stating standing is essential to court's exercise of jurisdiction). Because standing is essential to a justiciable controversy, standing can be raised at any time. *See Lucio v. Sch. Bd. of Indep. Sch. Dist. No. 625,* 574 N.W.2d 737, 739 n. 2 (Minn.App. 1998), *review denied* (Minn. Apr. 30, 1998).

Standing is acquired when a party has suffered some "injury-in-fact" *or* when a party is the beneficiary of some legislative enactment granting standing. *State by Humphrey v. Philip Morris Inc.,* 551 N.W.2d 490, 493 (Minn.1996). Standing to address zoning decisions is statutorily granted. Minn.Stat. § 462.361, subd. 1. The statute provides:

Any person *aggrieved* by an ordinance, rule, regulation, decision or order of a governing body or board of adjustments and appeals acting pursuant to sections 462.351 to 462.364 may have such ordinance, rule, regulation, decision or order, reviewed by an appropriate remedy in the district court, subject to the provisions of this section.

*Id.* (emphasis added). Because standing is statutorily defined in this case, Minneapolis's reliance on "general standing doctrine" or "injury-in-fact" analysis is misplaced. *See Philip Morris Inc.,* 551 N.W.2d at 495.

The proper focus for a standing determination under Minn.Stat. § 462.361 is whether the party seeking review is an "aggrieved" person. A person is "aggrieved" when a municipality's action adversely "operates on his rights of property or bears directly upon his personal interest." *Stansell v. City of Northfield,* 618 N.W.2d 814, 819 (Minn.App.2000) (quotation omitted), *review denied* (Minn. Jan. 26, 2001). Additionally, a party must allege "particularized injuries" to his or her property rights or personal interests. *Id.*

Here, Citizens alleged the following harms would result from Minneapolis's actions:

(1) [A] hyper-concentration of those with mental illness or chemical dependency rising to the level of one-third of the population in the defined neighborhood[;]

(2) [E]rosion of the neighborhood's well-established diversity[;]

(3) [I]ncreased crime and behavior requiring police intervention. Block pa-

trols have experienced difficulty recruiting patrol walkers as a result of the existing level of crime and threatening conditions. The addition of Lydia House increases the population needing protection from crime and threatening conditions and increases the likelihood of incidents requiring police intervention[;]

(4) [I]ncreased resources from those living and working within the defined neighborhood, in particular to assist a project that has been poorly organized and developed by a group lacking experience and expertise in providing for this population[; and]

(5) [D]eterrence of positive new business development, deterrence of retaining current businesses and deterrence of families moving into the neighborhood, resulting in a decline in the livability of the neighborhood and an increase in blight. This includes the loss of the Turtle Bread development at Nicollet and Franklin subsequent to . . . [Minneapolis's] granting of the waiver for Lydia House.

These statements demonstrate particularized injuries to Citizens' rights of property or their personal interest. We conclude Citizens is an aggrieved person under Minn.Stat. § 462.361, subd. 1 and therefore, has standing to challenge Minneapolis's zoning decision.

2. It is undisputed that the proposed residents of Lydia House are disabled, Lydia House is a supportive housing facility requiring a spacing ordinance waiver, the Fair Housing Amendment Act applies to municipal zoning ordinances, and Minneapolis determined the Fair Housing Amendment Act required them to grant a waiver because it was a reasonable and necessary accommodation for disabled persons. But Citizens argue the district court erred in finding the federal Fair Housing Amendment Act of 1988 to Title VIII of the Civil Rights Bill required a spacing ordinance waiver for Lydia House as a necessary and reasonable accommodation.

 Zoning determinations are not "traditional" civil appeals. *See Northwestern College v. City of Arden Hills,* 281 N.W.2d 865, 868 (Minn.1979). When reviewing a zoning determination, appellate courts review directly the municipality's determination without any regard for the district court's conclusions. *Id.* "The standard of review in all zoning matters is whether the local authority's action was reasonable." *St. Croix Dev., Inc. v. City of Apple Valley,* 446 N.W.2d 392, 397 (Minn. App.1989), *review denied* (Minn. Dec. 1, 1989). A municipality's determination is reasonable when the stated reasons for its decision are legally sufficient and have a factual basis. *Northwestern College,* 281 N.W.2d at 868. Interpretation of a federal statute, however, is a question of law reviewed de novo. *Vezina v. Best W. Inn Maplewood,* 627 N.W.2d 324, 328 (Minn. 2001); *Cimarron Vill. v. Washington,* 659 N.W.2d 811, 815 (Minn.App.2003). Therefore, this court will review de novo what the Fair Housing Amendment Act requires, but we will review Minneapolis's decision to grant the waiver only to determine if it had a legally sufficient and factual basis.

The Fair Housing Amendment Act provides that it is unlawful

(f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) that buyer or renter

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that person.

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

(A) that person; or

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that person.

42 U.S.C. § 3604(f) (2000). Unlawful discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodation may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* at (3)(B).

The parties provide extensive federal case law addressing numerous conflicts between zoning ordinances and the Fair Housing Amendment Act. This court is bound by decision of the Minnesota Supreme Court and the United States Supreme Court. *Jendro v. Honeywell, Inc.,* 392 N.W.2d 688, 691 n. 1 (Minn.App.1986), *review denied* (Minn. Nov. 19, 1986). We are not, however, bound by any other federal courts' opinion, even when interpreting federal statutes. *Northpointe Plaza v. City of Rochester,* 457 N.W.2d 398, 403 (Minn.App.1990), *aff'd* 465 N.W.2d 686 (Minn.1991). Although not binding, these other federal court opinions are persuasive and should be afforded due deference. *Id.* at 403–404.

Citizens argue this court should adopt the reasoning of *Familystyle of St. Paul, Inc. v. City of St. Paul,* 923 F.2d 91 (8th Cir.1991), and hold the Fair Housing Amendment Act does not apply to ordinances that are rationally related to legiti-

mate state interests. We conclude *Familystyle* does not address the Fair Housing Amendment Act's unambiguous language that failure to provide a necessary, reasonable accommodation is unlawful discrimination. *See* 42 U.S.C. § 3604(f)(3)(B) (2000). Rather, we find *Oconomowoc Residential Programs, Inc. v. City of Milwaukee,* 300 F.3d 775 (7th Cir.2002) to be a more well reasoned opinion, consistent with the Fair Housing Amendment Act's plain language and choose to follow that reasoning.

The test of whether an accommodation is reasonable is a "highly fact-specific inquiry" that requires balancing of the parties' needs. *Oconomowoc,* 300 F.3d at 784. To find an accommodation reasonable it must be capable of producing desirable results and must not impose undue financial or administrative burdens. *Id.* The cost analysis includes both financial and administrative costs and burdens. *Id.* When considering a waiver to zoning ordinances, the accommodation must not be "so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change." *Id.* (quotation omitted).

Necessary is defined as "[n]eeded to achieve a certain result or effect; requisite." *The American Heritage College Dictionary* 911 (3d ed. 2000). In the context of the Fair Housing Amendment Act, "necessary" requires "a showing that the desired accommodation will affirmatively enhance a disabled [person's] quality of life by ameliorating the effects of the disability." *Oconomowoc,* 300 F.3d at 784 (quotation omitted). This means the zoning ordinance cannot "give disabled people less opportunity to live in *certain neighborhoods* than people without disabilities." *Id.* (emphasis added, quotation omitted).

▓ We conclude the Fair Housing Amendment Act requires a waiver of a zoning ordinance if the waiver is capable of producing desirable results while not imposing undue financial or administrative burdens on the municipality and is needed to allow disabled people the same opportunity to live in a certain neighborhood as people without disabilities.

▓ Having determined when a reasonable accommodation is necessary under the Fair Housing Amendment Act, we next consider whether that requirement was a legally insufficient basis for Minneapolis to grant a spacing ordinance waiver. The Minneapolis Code of Ordinances provides:

Supportive housing shall be located at least one-fourth (1/4) mile from all existing supportive housing and from all of the following uses . . .

 a. Community correctional facility

 b. Community residential facility

 c. Inebriate housing

 d. Motel

 e. Overnight shelter.

Minneapolis, Minn., Code of Ordinances § 536.20, Supportive housing (1) (2003).[1] But the code also requires "these regulations shall not be applied so as to prevent the city from making reasonable accommodation as required by the Federal Fair Housing Amendment Act of 1988." *Id.* at § 520.80 (2003). Furthermore, we conclude the unambiguous language of the Fair Housing Amendment Act *requires* a city to make reasonable accommodation in its generally applicable zoning ordinances when the accommodation is necessary to give a handicapped person equal opportunity to use and enjoy a dwelling. *See* 42 U.S.C. § 3604(f)(1), (3)(B). Therefore, the requirements of the Fair Housing Amendment Act are a legally sufficient basis to grant a waiver.

▓ We now analyze the record to determine if a significant factual basis exists for finding the spacing ordinance waiver was reasonable accommodation and was necessary to afford Lydia House's proposed residents an equal opportunity to use and enjoy a dwelling.

The city council's findings of fact detail both why the waiver is reasonable and why it is necessary. The city council found the waiver was reasonable because it "will not impose a financial or administrative burden on the City. [And Lydia House] . . . will not fundamentally alter the City's land use or zoning scheme." The city council reached this conclusion based on the following facts:

 a. The vast majority of housing units in the surrounding area are multiple-family, rental housing. The zoning of the surrounding area allows for high-density residential use. Conversion of the former 140–bed nursing home into an apartment building with 40 efficiency units is compatible with the surrounding residential uses.

 b. There are several businesses, supportive service uses, and cultural and recreational uses in the area. The supportive services associated with the [Foundation] facility will also be compatible with uses in the surrounding area.

 c. Assertions that either the existing eight facilities that are relevant to the ¼ mile spacing requirement for [the Foundation], or the proposed [Foundation] facility, have or will have a detrimental effect on crime levels, property values,

---

1. The Foundation applied for the conditional use permit, maximum occupancy variance, and the spacing ordinance waiver in 2001. The Minneapolis Code of Ordinances was reenacted in 2003. The current language in the Code appears to be identical to the ordinances in effect at the time of the Foundation's application.

development activity, business vitality or the stability of the area are unsubstantiated by the evidence in the record of this matter.

d. The impact of an additional supportive housing facility in this ¼ mile area is mitigated by the existing population density, the prevalence of multiple-family residential dwellings in the area, and the fact that three of the eight existing facilities are separated from 1920 LaSalle by Interstate 94.

The city council concluded the waiver was necessary because:

a. On-site supportive services are necessary to help residents with disabilities and a history of homelessness to maintain physical and mental health, employment security, and independent living status. (This section also includes a footnote that states if the services were provided off-site the spacing requirement would not apply).

b. Supportive housing for "permanent" tenancy (as opposed to shelters or transitional housing) is a relatively new concept and is not widely available in [Minneapolis]. The [Foundation] proposal will help fill a need for permanent supportive housing options.

c. It is expected that many of the prospective tenants will be people who are currently living in temporary housing in the neighborhood. The [Foundation] facility will provide an opportunity for permanent housing in this neighborhood for these and other individuals.

d. The proposed facility is directly across the street from Plymouth Congregational Church and [the Foundation] offices, which will make management of the LaSalle facility more efficient and effective and which will enhance the opportunity for community building opportunities between the housing residents and sponsoring organizations.

e. The proximity of 1920 LaSalle to [Minneapolis's] central business district, community retail services, several major bus lines, recreational and cultural venues, and government and social service providers is important to the viability of this housing facility for tenants in need of those types of services and who are expected to rely heavily on public transportation.

f. The assertion that the establishment of the proposed [Foundation] facility at 1920 LaSalle is not in the best interests of the prospective residents due the number of other people receiving supportive services in the area and because they are perceived to be "vulnerable" to criminal activity in the area is unsubstantiated in the record for this matter.

These facts support Minneapolis's finding that the a waiver of the spacing ordinance was a reasonable accommodation necessary to afford Lydia House's proposed residents an equal opportunity to use and enjoy a dwelling.

Based on the municipality's record and our interpretation of the Fair Housing Amendment Act, we conclude its decision is legally sufficient and has a factual basis. Minneapolis's decision to grant the Foundation a spacing ordinance waiver for Lydia House is reasonable and must be affirmed.

▌ 3. Citizens argue the grant of a conditional use permit was arbitrary, capricious, and unreasonable because they presented sufficient evidence that Lydia House would be detrimental to the public health, safety, comfort, or general welfare and therefore, they argue, granting the permit does not conform to Section 525.340 of the Minneapolis Code of Ordinances. A municipality's decision to grant or deny a

conditional use permit or variance is a quasi-judicial decision that should be afforded great deference. *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 416–17 (Minn.1981). On appeal from a grant of a conditional use permit or variance, this court reviews the zoning action to determine whether the decision was reasonable. *Id.* at 417.

"[D]enial of a conditional use must be based on something more concrete than neighborhood opposition and expressions of concern for public safety and welfare." *Chanhassen Estates Residents Ass'n v. City of Chanhassen,* 342 N.W.2d 335, 340 (Minn.1984). Once an applicant meets the requirements for granting a conditional use permit, "approval of a permitted use follows as a matter of right." *Id.*

Here, supportive housing is permissible in an Office Residence 2 zoning districts so long as the "use complies with all other applicable provisions of this ordinance." Minneapolis, Minn., Code of Ordinances § 547.30(c), Table 547–1 (2003). The property at 1920 LaSalle is in an Office Residence 2 zoning district, and Lydia House is a supportive housing facility. Therefore, it is a permitted use. Lydia House produced sufficient evidence for Minneapolis to make all the necessary findings, which it did when it adopted the findings of the planning department and explicitly incorporated the planning department's report by reference. The requirements for granting a conditional use permit were met and approval followed as a matter of right. The grant of the conditional use permit is affirmed.

The Minneapolis Code of Ordinances limits supportive housing units to 32 residents. *Id.* at § 536.20, Supportive housing (2) (2003). Minneapolis may grant a variance for this occupancy limit if specific findings are made. *Id.* at § 525.500 (2003). Citizens argue there are no valid findings in this case because they are not in writing and do not have "reasonable support." But Minneapolis's findings of fact incorporated by reference the planning department's findings on both the conditional use permit and the variance. The planning department's report details the basis for each finding required by Section 525.500 of the Minneapolis Code of Ordinances. Minneapolis held a public hearing and received substantial correspondence both for and against the granting of the variance. The record in this case supports a conclusion that the city council's grant of the variance was reasonable.

## DECISION

Minneapolis determined it must grant the Foundation a spacing ordinance waiver because the Fair Housing Amendment Act required the waiver as a reasonable accommodation necessary to provide disabled persons equal opportunity to reside in a certain neighborhood. The Fair Housing Amendment Act's requirements are a legally sufficient ground to grant such a waiver and Minneapolis's had a factual basis to conclude the waiver was a reasonable accommodation necessary to afford Lydia House's proposed residents equal opportunity to reside in this neighborhood. Further, Minneapolis granted the Foundation a conditional use permit and a maximum occupancy variance under the Minneapolis Code of Ordinances after conducting public hearings. Minneapolis's grant of the waiver, permit, and variance was reasonable. We affirm the district court's grant of summary judgment.

**Affirmed.**