**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0304**

Randy Dale Sixta,
Appellant,

vs.

Lincoln County Sheriff's Office,
Respondent.

**Filed October 13, 2025**
**Affirmed**
**Schmidt, Judge**
**Concurring in part, dissenting in part, Connolly, Judge**

Lincoln County District Court
File No. 41-CV-24-15

Zachary Webster, Birkholz & Associates, LLC, Mankato, Minnesota (for appellant)

Keith Ellison, Attorney General, Madeleine DeMeules, Morgan Alexander, Assistant Attorneys General, St. Paul, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Schmidt, Judge; and Harris, Judge.

**SYLLABUS**

The phrase "adjudicated as a mental defective" as used in 18 U.S.C. § 922(g)(4) (2024) includes individuals who have been adjudicated mentally ill and a danger to themselves or others.

# OPINION

**SCHMIDT**, Judge

Appellant Randy Dale Sixta challenges the district court's denial of his petition to appeal respondent Lincoln County Sheriff's Office's denial of a permit to carry a firearm. Sixta argues the district court erred in determining that he lost his federal firearm rights because it used the wrong definition of "adjudicated as a mental defective"[1] under 18 U.S.C. § 922(g)(4). Because the district court used the correct definition, we affirm.

## FACTS

In 2018, Sixta attempted to die by suicide by shooting himself with a gun in the chest. Following a commitment hearing in early 2019, a district court determined that Sixta "is a mentally ill person as defined by [Minnesota Statutes section 253B.02 (2018)] and meets the statutory criteria for civil commitment." In the commitment order, the district court found that Sixta

> has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which is manifested by instances of grossly disturbed behavior or faulty perceptions and poses a substantial likelihood of physical harm to self or others.

---

[1] The phrase "a mental defective" carries offensive connotations that further harmful stereotypes. *See, e.g.*, *Black's Law Dictionary* 1178 (12th ed. 2024) (defining "mental defective" and noting shortened term "defective" is "considered a callous, derogatory term"); *United States v. Harvey*, 609 F. Supp. 3d 759, 763 (D. Neb. 2022) (describing term as "inartful"). We must use the phrase because the controlling federal statute uses the term and its definition is the crux of the legal issue before the court.

2

The district court stayed Sixta's commitment to the custody of the Commissioner of Human Services for six months and imposed conditions on the stay. After the six months passed and Sixta satisfied the conditions, the stay of commitment expired in July 2019.

Prior to his 2018 mental-health crisis, Sixta had obtained a permit to carry a firearm. That permit was suspended due to the commitment proceedings. After the stayed commitment order expired, the Lincoln County Sheriff reinstated Sixta's permit.

Sixta applied to renew his permit to carry in 2023. The new Lincoln County Sheriff denied Sixta's application, citing to the the 2019 commitment order as the reason for denying the application.

Sixta filed a petition with the district court under Minnesota Statutes section 624.714, subdivision 12 (2024), to appeal the Sheriff's denial of his permit to carry a firearm. The district court held a hearing at which both Sixta and the sheriff's office presented witnesses. Sixta introduced evidence that he had complied with all the conditions of the stayed commitment order and that he had completed mental-health treatment and counseling. One of Sixta's treatment providers testified that Sixta was well-adjusted, was at a low risk for self-harm, no longer met the criteria for a depressive disorder, and had no mental-health-related concerns.

After the hearing, the district court rejected Sixta's appeal. The district court determined that Sixta was ineligible to possess a firearm under 18 U.S.C. § 922(g)(4) because he had been "adjudicated as a mental defective." The district court based its decision on the civil commitment order that determined Sixta met the statutory criteria for civil commitment under Minnesota Statute section 253B.09 (2018).

3

Sixta requested to file a motion for reconsideration because the district court had not considered 34 U.S.C. § 40911 (2024). The court denied the request, noting that section 40911—enacted in 2008—was not a new law and, therefore, could have been raised in Sixta's original petition. The district court further concluded that Sixta "has not made the requisite showing that the [district court's] earlier decision is palpably wrong."

Sixta appeals.

## ISSUES

I. **Did the district court err in denying Sixta's petition to appeal the Lincoln County Sheriff's denial of Sixta's permit to carry a firearm?**

II. **Did the district court err in rejecting the arguments that Sixta first raised in his motion for reconsideration?**

## ANALYSIS

I. **The district court did not err in denying Sixta's petition to appeal the Lincoln County Sheriff's denial of Sixta's permit to carry a firearm.**

Minnesota law requires a sheriff to issue a permit to possess a firearm to any eligible person, unless the individual is prohibited from possessing a firearm under "any federal law."[2] Minn. Stat. § 624.714, subd. 2(b)(4)(ix) (2024). As is relevant to this appeal, federal law prohibits any person "who has been adjudicated as a mental defective or who has been committed to a mental institution" from possessing a firearm. 18 U.S.C. § 922(g)(4). The parties agree that Sixta has never been committed to a mental institution, but they disagree as to whether Sixta has ever been "adjudicated as a mental defective[.]" *Id.*

---

[2] The parties do not address whether Sixta is ineligible to possess a firearm under state law. *See* Minn. Stat. § 624.713, subd. 1 (2024) (listing persons ineligible to possess firearms).

4

"The interpretation of a [federal] statute is a question of law that [appellate courts] review de novo." *Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016). When interpreting a statute, we must first determine whether the language of the statute is clear on its face. *Christenson v. Henke*, 831 N.W.2d 532, 536 (Minn. 2013). "The purpose of statutory interpretation is to ascertain the intention" of the Legislative Branch and we must "interpret words employed in a statute according to their plain meaning." *Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 292 (Minn. 2016).

A statute is ambiguous, however, if it "is subject to more than one reasonable interpretation." *State v. Walton*, 14 N.W.3d 840, 843 (Minn. App. 2024). When the legislature's "intent is not clearly discernible from the explicit words of the statute, we must look to other tools to interpret its meaning." *City of Circle Pines v. County of Anoka*, 977 N.W.2d 816, 823 (Minn. 2022) (quotation omitted); *see also Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 146-47 (2017) (employing tools to the resolve ambiguity).

### A. The phrase "a mental defective" is ambiguous.

The Sheriff's Office argues that the plain language of the phrase "a mental defective" includes those with intellectual impairment and mental illness, which, according to the Sheriff's Office, includes Sixta due to the prior commitment order. Sixta contends that there are two reasonable interpretations and, thus, the statutory phrase is ambiguous. The parties agree that the phrase "a mental defective" encompasses those adjudicated as having intellectual impairments, which—both parties agree—does not include Sixta. The parties diverge in their analysis of whether the phrase also includes those who have been adjudicated to have a mental illness under a state-law commitment proceeding.

5

Congress has not defined the phrase "adjudicated as a mental defective." When the legislative branch has not "defined the relevant terms, we may consider dictionary definitions to determine a word's common usage." *Walton*, 14 N.W.3d at 844 (quotation omitted); *see also Life Techs. Corp.*, 580 U.S. at 146-47 (analyzing dictionary definitions).

*Black's Law Dictionary* defines "mental defective" as: "Someone who, as a result of marked intellectual disability, or mental illness, incompetency, condition, or disease, is a danger to self or to others, or lacks the mental capacity to contract or manage his or her own affairs." *Black's Law Dictionary* 1181 (11th ed. 2019) (defining "mental defective"); *see also The Oxford English Dictionary* 611 (2d ed. vol. 9 1989) (defining "mental case, defective, incapable, patient" as "persons suffering from some kind of mental impairment; persons under medical care for mental illness"). Other dictionaries, however, define "mental defective" as being specific to intellectual disabilities. *See Oxford Dictionary* 1107 (3d ed. 2010) (defining "mental defective" as "a person with a mental disability").

The conflicting dictionary definitions demonstrate that the phrase is subject to more than one reasonable interpretation. We agree with Sixta that the phrase is ambiguous. We must, therefore, look beyond the plain language of the statute to decipher Congress's intent.

**B.      The conflicting interpretations of the phrase.**

The parties offer different paths to resolve the ambiguity. Sixta contends that we should follow a decision of the United States Court of Appeals for the Eighth Circuit that interpreted the phrase in 1973. The sheriff's office asserts that the Alcohol, Tobacco, and Firearms' (ATF) definition—promulgated in a 1997 regulation—controls. We address each argument in turn.

6

### 1. The Eighth Circuit Court of Appeals interpreted "a mental defective" as *excluding* "mentally ill" individuals.

Sixta argues that the district court should have followed the Eighth Circuit's interpretation of "a mental defective." We are not bound by federal court decisions—beyond those issued by the United States Supreme Court—even when those opinions are "interpreting federal statutes." *Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 20 (Minn. App. 2003). Those "federal court opinions are persuasive and should be afforded due deference." *Id.*

In 1973, the Eighth Circuit Court of Appeals analyzed whether a finding that a defendant is mentally ill—as found by the Board of Mental Health of Lancaster County, Nebraska—was an adjudication of mental defectiveness within the meaning of a prior version of the statute. *United States v. Hansel*, 474 F.2d 1120, 1123 (8th Cir. 1973).[3] The court concluded that "the term 'mental defective' as used in the Gun Control Act does not include mental illness." *Id.* The Eighth Circuit employed "the familiar rule that criminal statutes are to be strictly construed and to give to [the term 'mental defective'] its narrow meaning[.]" *Id.* (quotation omitted). The court of appeals derived its interpretation of the term, in part, from a doctor's testimony at trial: "In its plain meaning, the term 'mental defective,' as Dr. Richardson testified, normally designates an individual marked subnormal intelligence." *Id.* at 1124. The Eighth Circuit also looked to a state court opinion, definitions from a psychiatric dictionary, the Encyclopedia Britannica, and The

---

[3] The Eighth Circuit did not reach the question of "whether the 'finding' was an 'adjudication[.]'" *Hansel*, 474 F.2d at 1123.

Royal Commission on Capital Punishment. *Id.* Ultimately, the Eighth Circuit Court of Appeals held that the definition of "a mental defective" is "a person who has never possessed a normal degree of intellectual capacity, whereas in an insane person faculties which were originally normal have been impaired by mental disease."[4] *Id.* The court recognized that some courts have given the term "a more expansive meaning." *Id.* at 1125.

The Eighth Circuit Court of Appeals' decision offers one avenue to resolve the ambiguity. We are not bound by *Hansel*, but we afford the federal appellate court's decision due deference in considering whether to adopt that interpretation. *See Plymouth Congregational Church*, 672 N.W.2d at 20.

### 2. The ATF defined "a mental defective" as *including* those who are mentally ill and a danger to themselves or others.

The sheriff's office argues that the district court correctly determined that the ATF's definition of "adjudicated as a mental defective" should control our analysis. In 1997, the ATF defined "adjudicated as a mental defective" to mean there was "[a] determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, *or mental illness*, incompetency, condition, or disease: (1) Is a danger to himself or to others; or (2) Lacks the mental capacity to manage his own affairs." 27 C.F.R. § 478.11(a) (2024) (emphasis added). When proposing the rule, the ATF noted that "[t]he legislative history makes it clear that Congress would broadly apply the

---

[4] Sixta also cites as supporting his position. In *Harvey*, the Nebraska federal district court addressed the ATF's regulation, but ultimately, as it was compelled to do, followed the Eighth Circuit's binding decision in *Hansel*. 609 F. Supp. 3d at 763. Unlike the Nebraska federal court, we are not required to follow the Eighth Circuit's decision. *Plymouth Congregational Church*, 672 N.W.2d at 20.

8

prohibition against the ownership of firearms by 'mentally unstable' or 'irresponsible' persons." Definitions for the Categories of Persons Prohibited from Receiving Firearms, 61 Fed. Reg. 47,095, 47,097 (Sept. 6, 1996) (to be codified at 27 C.F.R. pt. 178).

The sheriff's office argues that the ATF's definition in 27 C.F.R. § 478.11 is binding as a "legislative" rule, which has the force and effect of law. *See Kisor v. Wilkie*, 588 U.S. 558, 583 (2019). The sheriff's office contends that Congress granted the ATF authority to promulgate a legislative rule,[5] and the ATF complied with the notice-and-comment procedural requirements.[6] *Chrysler Corp. v. Brown*, 441 U.S. 281, 302-03 (1979); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (analyzing three-step procedure that requires agencies to (1) give notice, (2) allow for comments, and (3) include a general statement of basis and purpose in its final rule); 5 U.S.C. § 553 (2024).

But post-*Loper Bright*, an agency of the executive branch that promulgates a regulation defining a statutory phrase enacted by the legislative branch is no longer entitled to deference by the judicial branch. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024). Courts may find the agency's interpretation of the statute to be persuasive, but

---

[5] Congress granted the Attorney General the authority to promulgate rules and regulations necessary to enforce the Gun Control Act of 1968. *See* 18 U.S.C. § 926(a) (2024). The Attorney General and Congress delegated administration and enforcement of the Act to the ATF. *See* 28 U.S.C. § 599A(b)(1) (2024); 28 C.F.R. § 0.130(a)(1)-(2) (2025). Thus, Congress has granted the ATF the authority to create a legislative regulation.

[6] The ATF gave notice of its intent to amend the federal regulations to provide definitions for categories of persons prohibited from possessing firearms and allowed 90 days for interested parties to submit comments. *See* Definitions for the Categories of Persons Prohibited from Receiving Firearms, 61 Fed. Reg. at 47,095-98. The ATF also provided a general statement of basis and purpose of the regulation. *Id.* at 47,095-96.

the regulation is not controlling. *Id.* ("[A]lthough an agency's interpretation of a statute cannot bind a court, it may be especially informative to the extent it rests on factual premises within the agency's expertise") (quotations omitted). Thus, we reject the sheriff's office's argument that the regulation has the full force and effect of law as a legislative rule that is binding on our judicial interpretation of the phrase.

The sheriff's office contends that, even if the regulation is not binding, we should determine that the ATF's definition is more persuasive than the Eighth Circuit's definition. The United States Supreme Court has provided guidance on how, post-*Loper Bright*, courts should analyze an agency's regulation that defines statutory terms. *See Bondi v. VanDerStok*, 145 S. Ct. 857 (2025). *VanDerStok* involved the ATF's regulation defining a statutory phrase as applied to parts of guns in a weapon-parts kits. *Id.* at 864-65. The Supreme Court analyzed whether the ATF's regulation defining the statutory term "is facially inconsistent with the [Gun Control Act]." *Id.* at 872. In analyzing the regulation, the Supreme Court provided that, "while 'courts must exercise independent judgment in determining the meaning of statutory provisions,' the contemporary and consistent views of a coordinate branch of government can provide evidence of the law's meaning." *Id.* at 874 (quoting *Loper Bright*, 603 U.S. at 394). The Supreme Court noted that the ATF's new regulation was consistent with the agency's long-held views. *Id.* at 873-74; *see also id.* at 876-77 (discussing ATF's historical and consistent views) (Sotomayor, J., concurring). The Court concluded that the ATF's new regulation was consistent with the agency's past interpretations and regulations, and, thus, the Supreme Court used the ATF's definition for the statutory term. *Id.* at 873-76.

10

Although *VanDerStok* addressed a different ATF regulation defining a different statutory term, the decision provides a roadmap for our analysis. Consistent with the guidance from *VanDerStok*, we conclude that the district court properly applied the ATF's definition to the phrase "a mental defective." We reach this result for three reasons.

First, as the Supreme Court noted in *VanDerStok*, Congress has tasked the ATF to administer the laws surrounding who is eligible to possess firearms. *See* 18 U.S.C. § 926(a); 28 U.S.C. § 599A(b)(1). Given the agency's specialized knowledge due to Congress's grant of authority, we may give the regulation some weight.

Second, ATF's regulation is consistent with the long tradition of discouraging firearm possession by people living with mental illness. *See generally District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) (stating that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill"); *United States v. Veasley*, 98 F.4th 906, 912-16 (8th Cir. 2024) (detailing history of mental-illness-based prohibitions in firearm regulations).

Third, the ATF's regulation has existed since 1997, nearly a quarter of a century after the Eighth Circuit rendered its decision in *Hansel*. *See* Definitions for the Categories of Persons Prohibited from Receiving Firearms, 61 Fed. Reg. at 47,095. Before adopting the definition in the regulation, the ATF examined applicable caselaw. *See id.* at 47,097 ("With respect to the term, 'adjudicated as a mental defective,' [the] ATF has examined the legislative history of the term, *applicable case law*, and the interpretation of the term by other Federal agencies.") (emphasis added). Given the limited opinions addressing this issue before the regulation was codified in 1997, we can reasonably assume that the ATF

11

considered the Eighth Circuit's *Hansel* opinion when defining the phrase. *Cf.* *Pecinovsky v. AMCO Ins. Co.*, 613 N.W.2d 804, 809 (Minn. 2000) ("Courts presume that the legislature acts with full knowledge of previous statutes and existing caselaw."), *rev. denied* (Minn. Sept. 26, 2000). The decades-old regulation, implicit rejection of the Eighth Circuit's definition, and Executive Branch's actions since the regulation—without any objection from Congress—provides persuasive weight that the ATF's definition should apply. *See generally Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2455 (2025) (noting Executive Branch's practice "buttresse[d] the ordinary meaning and natural interpretation" of a statutory term where the "Executive Branch's actions for the last 26 years"—during which "relevant government actors" interpreted a statutory term as authorizing certain appointment powers—"reflected [a] straightforward interpretation of the statute—without any apparent objection from Congress"). Thus, we hold that the phrase "adjudicated as a mental defective" as used in 18 U.S.C. § 922(g)(4) includes individuals who have been adjudicated mentally ill and a danger to themselves or others.

Our holding finds support in United States Supreme Court precedent, albeit in dicta. In *Dickerson v. New Banner Institute, Inc.*, the United States Supreme Court addressed the question of whether an expunction of a state conviction automatically removed the federal prohibition against possessing firearms. 460 U.S. 103, 117 (1983). In ruling that Congress did not intend to automatically remove the prohibition against possessing firearms, the Court looked to section 922(g)(4) as an instructive example. The Supreme Court wrote,

> The imposition, by §§ 922(g)(4) and (h)(4), of continuing disability on a person who "has been adjudicated" a mental defective or committed to a mental institution is particularly

> instructive. A person adjudicated as a mental defective may later be adjudged competent, and a person committed to a mental institution later may be deemed cured and released. Yet Congress made no exception for subsequent curative events. The past adjudication or commitment disqualifies. Congress obviously felt that such a person, though unfortunate, was too much of a risk to be allowed firearms privileges.

*Id.*

Although not binding, the Supreme Court's analysis in *New Banner* adds support to our conclusion. The Supreme Court recognized that "[a] person adjudicated as a mental defective may later be adjudged competent," but the individual remains disqualified from possessing a firearm. *Id.* Under the Eighth Circuit's narrow definition, a person of "subnormal intelligence"[7] could never later be "adjudged competent[.]" *Id.* In contrast, the ATF's definition conforms with the Supreme Court's reading of the statute because a person living with a mental illness may be adjudicated incompetent at one point in time, but later be adjudged competent. *Id.*

We acknowledge Sixta's public-policy arguments that a mental-health crisis that occurred years ago should not have permanent negative legal consequences. There may be merit to Sixta's position, considering that he received a stayed civil commitment, complied with all conditions set by the commitment court, sought therapy and counseling, was subsequently determined by his treating doctor to be at a low risk for self-harm, and whose treating doctor testified he no longer met the criteria for a depressive disorder. And we are mindful of the concerns expressed in the dissent about this federal law defining

---

[7] *Hansel*, 474 F.2d at 1124.

13

Sixta's constitutional rights for the rest of his life. But we are not a policymaking court. *Cmty. Cares v. Faulkner*, 949 N.W.2d 296, 298 (Minn. App. 2020) (noting that the Minnesota Court of Appeals does not create public policy), *rev. denied* (Minn. Nov. 17, 2020). We must follow the law as written and as Congress intended. *Cf. Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987) ("The task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court."), *rev. denied* (Minn. Dec. 18, 1987). The statute reflects a congressional policy decision consistent with longstanding prohibitions on the possession of firearms by certain people.

Because we conclude that it effectuates the legislative intent, the ATF's regulation offers the best interpretation of the antiquated statutory phrase. Since Sixta had been ajudicated "a mental defective"—which, under the ATF's definition includes a person with a mental illness who is a danger to himself or others—the district court did not err in denying Sixta's petition to appeal of the sheriff's denial of his permit to carry a firearm.

## II. The district court did not err in rejecting Sixta's arguments raised for the first time in Sixta's motion to reconsider.

Sixta requested permission from the district court to move for reconsideration so the court could consider a new statutory argument. In ruling on Sixta's motion, the district court determined that Sixta's new statutory argument was not "an intervening legal development." The court also determined that Sixta failed to demonstrate that its earlier decision was palpably wrong. The district court denied Sixta's request for permission to bring a motion for reconsideration.

14

We have held that a district court's denial of a request for permission to move for reconsideration under Minnesota General Rules of Practice 115.11 "is not an appealable order." *Buhl v. State*, 922 N.W.2d 435, 442 (Minn. App. 2019); *see also Baker v. Amtrack Nat'l R.R. Passenger Corp.*, 588 N.W.2d 749, 755 (Minn. App. 1999) (noting that denial of request for reconsideration, even if construed as an order, was not appealable under Minnesota Rules of Civil Appellate Procedure 103.03 because the denial "neither determined Baker's action nor prevented a judgment from which Baker could appeal"); *Superior Shores Lakehome Ass'n v. Jensen-Re Partners*, 792 N.W.2d 865, 868 (Minn. App. 2011) (stating that this court would not consider an issue that was not raised until a request to file a motion for reconsideration). As such, we do not consider Sixta's statutory argument that was raised for the first time in a request for permission to bring a motion to reconsider. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (noting appellate courts only consider those issues argued before and considered by the district court).

## DECISION

The phrase "adjudicated as a mental defective," as used in 18 U.S.C. § 922(g)(4), includes individuals who have been adjudicated mentally ill and a danger to themselves or others. The district court properly applied the ATF's definition of that phrase to reject Sixta's petition to appeal the sheriff office's denial of his permit to carry a firearm.

**Affirmed.**

**CONNOLLY**, Judge (concurring in part, dissenting in part)

I concur in part II of the majority opinion that affirms the decision of the district court to deny appellant Randy Dale Sixta's request for leave to file a motion for reconsideration relating to his argument under 34 U.S.C. § 40911 (2024). But I respectfully dissent from the rest of the decision.

Under the United States Code, it is unlawful for any person "who has been *adjudicated as a mental defective* or who has been committed to a mental institution" to "receive any firearm or ammunition." 18 U.S.C. § 922(g)(4) (2024) (emphasis added). I believe, as the Eighth Circuit Court of Appeals held in *United States v. Hansel*, that the adjudication of a person as a "mental defective," means to designate the individual as one "of marked subnormal intelligence." 474 F.2d 1120, 1124 (8th Cir. 1973). Appellant here has never been adjudicated a "mental defective" as that term was defined in *Hansel*. And, as the district court found, and counsel for respondent conceded at oral argument, appellant was never committed to a mental institution. Moreover, as the district court also found, appellant's doctor testified that he had no mental-health-related concerns regarding appellant. Therefore, I would reverse the district court's decision and order that appellant be granted a firearm permit.

I begin by noting that Congress never defined the phrase "adjudicated as a mental defective" contained in 18 U.S.C. § 922 (2024). But the *Hansel* court did in 1973. *Id.* at 1123-24. In that case, the court recognized that "a distinction has usually been made between those persons who are mentally defective or deficient on the one hand, and those who are mentally diseased or ill on the other." *Id.* at 1124. The court then stated that it

"must construe [section 922] narrowly and give to 'mental defective' its general meaning." *Id.* 1125. The court added that, "[i]f it is the desire of Congress to prohibit persons who have any history of mental illness from possessing guns, it can pass legislation to that effect, but we cannot read into this criminal statute an intent to do so." *Id.* The *Hansel* decision has never been reversed, and the statute has never been amended to define "mental defective." *See* 18 U.S.C. § 922.

Respondent Lincoln County Sheriff's Office's entire argument is based on a regulation that was promulgated by the Bureau of Alcohol, Tobacco and Firearms (ATF) in 1997. That regulation is found in the Code of Federal Regulations, and states that adjudicated as a mental defective means that there was

> (a) A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease:
>
> (1) Is a danger to himself or to others; or
>
> (2) Lacks the mental capacity to contract or manage his own affairs.

27 C.F.R. § 478.11(a) (2024). Since appellant was subject to a stayed civil commitment, respondent argues that there was such a "determination" and therefore he cannot be granted a firearm permit. While respondent is certain of its argument, I am not.

I freely admit that the regulation says what it says. But following the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, a federal agency of the executive branch that promulgates a regulation defining a statutory phrase enacted by Congress is no longer subject to deference by the judicial branch. 603 U.S. 369, 402 (2024) (stating that,

"even when an ambiguity happens to implicate a technical matter, it does not follow that Congress has taken the power to authoritatively interpret the statute from the courts and given it to the agency"). As such, the regulation carries only persuasive value. *Id.* ("[A]lthough an agency's interpretation of a statute cannot bind a court, it may be especially informative to the extent it rests on factual premises within the agency's expertise." (quotations omitted)).

I do not find the regulation persuasive. Instead, in light of the *Hansel* court's narrow construction of section 922, which has never been reversed, I find the *Hansel* court's interpretation of section 922 to be persuasive. *See Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 20 (Minn. App. 2003) (instructing that federal caselaw, while not binding, may be persuasive and should be accorded "due deference"). I also find *Hansel* particularly persuasive because Congress has never amended 18 U.S.C. § 922 to define the phrase "adjudicated as a mental defective, and other federal circuit courts, as well as federal district courts within the Eighth Circuit that were decided after 27 C.F.R. § 478.11(a) was adopted, have relied on *Hansel*, agreeing that is still good law.

For example, in *United States v. B.H.*, the federal district court quoted *Hansel* and stated: "'If it is the desire of Congress to prohibit persons who have *any* history of mental illness from possessing guns, it can pass legislation to that effect, but we cannot read into this criminal statute an intent to do so.'" 466 F. Supp. 2d 1139, 1146 (N.D. Iowa 2006) (emphasis added) (quoting *Hansel*, 474 F. 2d at 1123, 1125). In *B.H.*, the federal district court considered the same regulation that is at issue in this case. *Id.* at 1144. In rejecting that regulation's application, the court stated that it was bound by precedent and noted that

the court in *Hansel* referred to the phrase "mental defective" as a term of art with a long history in psychology and the law. *Id.* at 1146 (citing *Hansel*, 474 F. 2d at 1124 (discussing treatises and cases from the early 1900s)). The court went on to say that, "[i]t is a well-settled principle that where words are employed in a statute which had at the time a well-known meaning in the law of this country, they are presumed to have been used in that sense." *Id.* at 1146-47 (quotation omitted).

Similarly, in *United States v. Harvey*, 609 F. Supp. 3d 759 (D. Neb. 2022), a different federal district court rejected the application of this regulation. In that case, the court stated: "It may be true, as the government suggests, that the ATF regulation is a more modern, 'better' definition. But the Eighth Circuit's decision in *Hansel* was quite plainly an exercise in statutory interpretation, and its holding—premised on the statutory text—is both clear and on point." *Harvey*, 609 F. Supp. 3d at 763 (citation omitted).

Of course, a regulation cannot contradict statutory text. *See Brown v. Gardner*, 513 U.S. 115, 122 (1994). But that is exactly what respondent wants this court to do. I will not.

Importantly, the *Hansel* definition of "mental defective" is also not limited to the Eighth Circuit. In *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, the Sixth Circuit Court of Appeals acknowledged that: "we note that § 922(g)(4) does not use the phrase 'mentally ill,' nor does it attempt to prohibit all currently mentally ill persons from firearm possession. Rather, the statute uses prior judicial adjudications—incompetency and involuntary commitment—as proxies for mental illness." 837 F.3d 678, 687 (6th Cir. 2016) (en banc).

Similarly, in *United States v. Rehlander*, the First Circuit Court of Appeals reversed the convictions of two defendants for violations of 18 U.S.C. § 922(g)(4), because they had neither been adjudicated as a mental defective nor committed to a mental institution. 666 F.3d 45, 50-51 (1st Cir. 2012). After acknowledging 27 C.F.R. § 478.11, the court reasoned that,

> in section 922, Congress did not prohibit gun possession by those who were or are mentally ill and dangerous, and such a free floating prohibition would be very hard to administer, although perhaps not impossible. This is why, as with the ban on prior felons, Congress sought to piggyback on determinations made in *prior judicial proceedings* to establish status.

*Id.* at 50. The court went on to state: "Thus, section 922(g)(4) does not bar firearms possession for those who are or were mentally ill and dangerous, but (pertinently) only for any person who has been adjudicated as a mental defective or has been committed to a mental institution." *Id.* (quotation marks omitted).

It is also telling that section 922(g)(4) contains the disjunctive "or" meaning that it is unlawful for a person to "receive any firearm or ammunition" if that person "has been adjudicated as a mental defective" *or* that person "has been committed to a mental institution." 18 U.S.C. § 922(g)(4). Since people are committed to a mental institution only if they have a mental illness, it is only logical that Congress meant "mental defective" to mean something other than mental illness, as the Eighth Circuit Court of Appeals determined in *Hansel*. Otherwise, the "or" contained in section 922(g)(4) would be rendered superfluous. *See Aberle v. Faribault Fire Dep't Relief Ass'n*, 41 N.W.2d 813, 817 (Minn. 1950) ("The word 'or' is a disjunctive and ordinarily refers to different things

as alternatives."). In other words, as appellant points out, the ATF's definition of "adjudicated as a mental defective" would entirely subsume the definition of "committed to a mental institution." A person could not be committed to a mental institution without being adjudicated as a mental defective, given the definition of the phrase "mental defective" contained in the ATF regulation. *See Jones v. United States*, 463 U.S. 354, 369 (1983) (holding that due process in a civil commitment proceeding requires proof that the individual is mentally ill and dangerous). And that would run contrary to "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Mt. States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985) (quotation omitted). Finally, the ATF's definition would also presumptively strip anyone who has been in a temporary guardianship or conservatorship of their Second Amendment rights—a breadth that would create constitutional concerns.

I also wish to briefly discuss the fundamental unfairness of respondent's position. As the district court found, appellant's treatment provider testified that appellant no longer has any mental-health-related concerns, yet under respondent's construction of the federal regulation, he would never be allowed to possess a firearm. The district court discussed appellant's predicament in a footnote in its decision denying the motion for reconsideration:

> The [c]ourt acknowledges that having a federal mental illness disability for firearms possession as a result of a state court adjudication puts [appellant] in a difficult position. A memorandum prepared by Minnesota Senate Counsel addressing the eligibility of persons with mental illness to possess firearms explains [appellant's] limited options:

"... Currently, under federal law there is no avenue for persons to seek relief except if it is a federal agency that imposed the mental health adjudication or involuntary commitment, such as the Veterans Administration. In these situations, the agency is required to provide a process for relief. For all other persons seeking relief from the federal disability, the person has no clear recourse (other than attempting to sue for a violation of the person's constitutional rights) except to seek relief under state law. A state law may provide relief from the federal (as well as the state) disability but only if the state law meets specified federal criteria. Minnesota's law [Minnesota Statutes section 624.713] does not. Thus, in Minnesota, a person may successfully petition a court to remove the mental illness disability imposed by Minnesota law but this will not affect the independent federal prohibition (which is for the most part similar to the Minnesota one)."

(Quoting "Firearms Possession by Persons with Mental Illness," Kenneth P. Backhus, Senate Counsel, Research, and Fiscal Analysis, Dec. 2019, https://www.senate.m/storage/scrfa/Firearms-1.pdf; [https://perma.cc/CG6B-QXFW]; *see also* "NICS IMPROVEMENT AMENDMENTS ACT OF 2007" (not including Minnesota on a list of states that have qualified relief of disability programs under section 105(a)), https://www.atf.gov/frearms/docs/guide/nicsactlist7-7-210pdf/download; [https://perma.cc/9G32-NZFL].

At oral argument, I asked counsel for respondent whether the ban would still apply if the incident involving appellant had happened at age 18, and 50 years later, he applied for a firearm permit. Respondent's counsel conceded that it would. I was then, and am now, simply astounded by that answer. In a time when society is trying finally to remove the stigma of mental illness, respondent's position guarantees that appellant will have that stigma for the rest of his life.

Finally, although it was not raised, I feel compelled to at least mention the elephant in the room. In *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, the United States Supreme Court recently reiterated that the Second Amendment protects the fundamental right of "ordinary, law-abiding, adult citizens" to own firearms. 597 U.S. 1, 31-32 (2022). On the other hand, it has also recognized that this right was not "unlimited" and observed that longstanding prohibitions of possession of firearms by felons and the mentally ill are "presumptively lawful." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008). I completely agree with such prohibitions. However, in this case, the record reflects that, when appellant petitioned to appeal the denial of his permit request, he was no longer mentally ill, had not been committed to a mental institution, and was law abiding. Consequently, I believe the denial of the permit is not only contrary to the clear, unambiguous language of the statute but also violates appellant's constitutional rights. Accordingly, I dissent.